BERT W. GREEN v. LEWIS I. LACLAIR.

October Term, 1916.

Present: MUNSON, C. J., WATSON, HASELTON, POWERS, and TAYLOR, JJ.

Opinion filed November 13, 1916.

*Trial—Jurymen—When not Disqualified—Challenging—Evidence—Cross Examination—Exception to Improper Argument—Judicial Notice—Trover—Sale of Mortgaged Personalty—Principal and Agent—Charge to the Jury—Mitigation of Damages—Return or Recaption of Property.*

The mere fact that a juryman has heard in court or elsewhere what the verdict on a former trial was, does not operate as a disqualification.

Where a jury is discharged because of an improper statement made by counsel in his opening statement, and a new jury impanelled,

a juryman drawn upon the first jury, but peremptorily challenged, is not disqualified from serving upon the second jury.

The custom of exercising peremptory challenges in such a manner that the jurymen do not know by which party the challenges are made is commended.

Evidence that a mare was sold with or without a warranty has no legitimate bearing upon the value of the mare, or upon the credibility of the witness' testimony of her value.

The general rule is that a cross-examiner need not make an offer disclosing the purpose of his cross-examination, but where such offer is made, the trial court may rely upon it and need not consider other possible aspects of the evidence offered.

In a case remanded to county court for trial upon the question of damages only, evidence *held* inadmissible, at least as the case stood at the time it was offered, since it went to the question of liability, but harmless, for the same reason.

Error in the exclusion of evidence cannot be predicated upon a theory of the case not advanced before or at the time of the ruling.

An exception taken to improper argument of counsel "to save interruption," impliedly asks the court not to interrupt the argument, and an available exception to what is said in argument cannot be saved in that way.

The Supreme Court will take judicial notice of the proceedings in a case when in this Court upon a former trial.

In an action of trover against the defendant for selling a bay mare upon which plaintiff held a chattel mortgage, it appeared that plaintiff placed the mortgage in the hands of a deputy sheriff for foreclosure; that the deputy sheriff seized the mare, and demanded a bond of plaintiff; that the bond was not furnished and the deputy sheriff returned the mortgage and note to plaintiff, and delivered the mare to a third party who made demand upon him for her. On these facts, *held*, the officer was not the agent of plaintiff in delivering the mare to the third party, and therein went outside of his official right and duty; and his act was not an act of control and ownership by plaintiff.

An inaccurate statement in the charge as to the evidence is cured by a reference to the evidence and the claims made by defendant in respect thereto.

If an omission of the presiding judge to correct an inaccurate statement made in the charge is obviously inadvertent, counsel should call his attention to the matter, if it is regarded of any importance.

An inaccurate statement in the charge in an action of trover that there is a count in deceit is harmless where the whole body of the charge treats the action as trover and nothing else.

The general doctrine that the return or recaption of property converted may go in mitigation of damages in an action of trover is well established.

Where mortgaged personal property is sold by the mortgagor, without consent of the mortgagee, the mere taking of the property by an officer as agent for the mortgagee for the purpose of a foreclosure sale, is not, without more, such a re-taking as will go in mitigation of damages in an action of trover brought by the mortgagee against the mortgagor.

In an action of trover for the conversion of mortgaged personal property brought by the mortgagee against the mortgagor, it is immaterial that, in a previous and abandoned proceeding to foreclose the mortgage, the mortgagee failed to give a bond to the officer, or that he instructed him to return the property without selling it; because the mortgagee had the right to abandon the foreclosure proceedings, and sue the mortgagor in trover for the conversion.

In an action of trover for the conversion of mortgaged property, brought by the mortgagee against the mortgagor, the fact that, when proceedings for a statutory foreclosure sale, previously instituted, were abandoned, the officer did not return the property to the person entitled to it, does not affect the question of damages.

TROVER. Trial by jury, upon the question of damages only, at the December Term, 1915. Caledonia County, *Stanton,* J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. The opinion states the case.

*Simonds, Searles & Graves* for the defendant.

*Frederick W. Baldwin,* and *Porter, Witters* and *Harvey* for the plaintiff.

HASELTON, J. This is an action in trover for the conversion by the defendant of a bay mare on which the plaintiff had a chattel mortgage. The case has once before been here. 89 Vt. 346, 95 Atl. 499.

The questions heretofore settled were that the plaintiff's mortgage was valid at the time of the sale of the mare, and that the defendant sold her without the plaintiff's consent, and that so the defendant was liable in this action.

On account of prejudicial error relating to the matter of damages, the judgment obtained by the plaintiff was reversed as to that question, and the case is now here on a bill of exceptions brought by the defendant alleging errors in the proceedings on the trial of this question of damages.

After a jury had been empanelled, the plaintiff made an opening statement in which he mentioned that on the previous trial the plaintiff had obtained a verdict of $300. After this statement, the court and counsel retired to the judge's room for discussion. When they again came in, the court discharged the panel.

The empanelling of another jury then proceeded. It appeared that four of the jurymen then just called, had heard the statement as to the verdict on the former trial, and for that reason the defendant's counsel asked the court to discharge them. This the court declined to do, and the defendant excepted.

In the action of the court there was no error. The mere fact that a juryman had heard in court or elsewhere what the verdict on the former trial was, would not operate as a disqualification.

When the list of names of jurymen was exhausted, the court directed the clerk to call some of those that had been called in the empanelling of the former jury, and the clerk then called one Dean. It appeared that he had been peremptorily challenged on the first call by one of the parties, although counsel on both sides stated that they did not know which side challenged him. Counsel for the defendant objected to the calling of this juryman on the ground that he was disqualified in consequence of the facts just stated. The court overruled the objection and the defendant excepted. In the ruling of the court there was no error. The defendant's right to peremptory challenges remained unimpaired.

Four other jurymen were called, three of whom had formerly been challenged by the plaintiff, and one of whom had been challenged by the defendant.

The defendant's objection and exception on the ground of disqualification applied to all of these. But what has been said as to Dean's case applies to all of them, and with particular force to the case of those who had been challenged by the plaintiff.

The defendant here urges that it is probable that the jurors previously challenged nourished a prejudice against the party that they believed had excused them. If they knew which party had in fact excused them, that circumstance might well have appealed to the discretion of the trial court. We infer, from what appears from the transcript, that the peremptory challenges of jurymen called on the first panel were so exercised that the jurymen did not know by whom the respective challenges were made. We mention this by way of commending such a method, and not because the question of law here presented is affected by the method through which the challenges were made known.

The plaintiff, who had originally sold the mare to the defendant and taken back the mortgage in question, was a witness in his own behalf and testified as to her value at the time he sold her, a time so near the time of the conversion as to make the evidence admissible on the question of value at the time of the conversion, as was held when the case was here before. On cross-examination the plaintiff was asked if at the time he sold this mare he warranted her. Objection being made by the plaintiff's counsel, the court declined to take the answer to this question, and the defendant excepted.

The defendant claimed that this evidence was along the line of evidence that had been already received. But an examination of the transcript does not sustain this claim. The defendant also claimed that this inquiry bore upon the value of the mare, and the credibility of the plaintiff's testimony as to her value, and offered the evidence on those grounds. But testimony that the mare was sold with or without a warranty would have had no legitimate bearing upon either of those questions. The general rule is that a cross-examiner need not make an offer disclosing the purpose of his cross-examination. But where such an offer is made, the trial court may rely upon it and need not consider other possible aspects of the evidence offered. So we do not inquire further than it was incumbent upon the trial court to do. No error appears in the exclusion

of the evidence as to a warranty since an answer either way would have been immaterial, as the matter was presented, and would have had no impeaching effect. *Lyman* v. *James*, 87 Vt. 486, 489, 89 Atl. 932.

In the cross-examination of the plaintiff, the defendant's counsel, without objection being made, inquired of the plaintiff if he did not consent that the defendant might trade off the mare, if he had not told that he so consented. To these questions the plaintiff answered "no," but this line of inquiry was pursued to a considerable extent.

All this evidence was in fact inadmissible, at least as the case then stood, since it went to the question of liability which was not open for consideration. 89 Vt. 346, 95 Atl. 499.

Then officer Chapman, a witness for the plaintiff, testified that he went to the defendant in behalf of the plaintiff with the mortgage, and asked for payment on the note and mortgage, and that the defendant had then disposed of the mare. After the officer had so testified he was asked by the plaintiff's counsel if, at the time he called on the defendant for payment, the latter stated that he had been given permission by the plaintiff to sell the mare. The witness answered "no," and, under objection and exception, the court ruled that the question and answer might stand. It will be remembered that the defendant had undertaken to open up this question of consent.

The plaintiff claimed that if the defendant had disposed of the mare with the consent of the plaintiff, it would have been natural for him to have made that claim to Mr. Chapman at the time in question, and that the fact that he didn't then say anything about permission was evidence that he didn't have permission. The defendant, on the other hand, claimed that the fact that he didn't, on the occasion in question, say anything was entirely immaterial. It is not necessary to discuss this question, for the defendant had begun these inquiries about consent, a matter finally determined when the judgment rendered on the former trial was affirmed in this Court except as to the matter of damages, and, if the defendant's silence about the matter of consent had no tendency to show lack of it, and yet was taken as evidence tending to show that he had no permission, no harm was done, for the court and jury, on this trial, were bound to start with the established fact that the

defendant had sold or disposed of the mortgaged property without the consent of the mortgagor.

At a later stage of the case, after the plaintiff had rested, the defendant was, after considerable discussion, allowed to testify that he had the plaintiff's consent to the disposition of the mare, on the ground that such testimony tended to show that the defendant thought he had such consent, and so bore upon the question of exemplary damages, in that it tended to show that the conversion was not wanton and malicious. We have no occasion to discuss the admissibility of this evidence for the purpose for which it was finally offered and received.

It is enough to say that, when officer Chapman gave the testimony above considered, the theory that evidence of consent would be admissible not to show consent, but to show that the defendant thought he had consent, had not been suggested. The aspect of the case when officer Chapman testified was such, that the question of consent was wholly immaterial, and error cannot be predicated upon some theory of the case not then nor theretofore advanced. *Foster* v. *Dickerson*, 64 Vt. 233, 24 Atl. 253.

During the argument for the plaintiff, his counsel made connected statements as to the amount for which recovery could be had that were inconsistent with each other, some of which were wrong, and one of which was obviously misunderstood by one of the defendant's counsel, as appears by a remark he made that called out a further statement of plaintiff's counsel which would have been objectionable but for the remark that called it out.

In the midst of this confusion the court made a clear statement as to the measure of actual damages which brushed aside the incorrect suggestions of the plaintiff's counsel, and to this statement the plaintiff's counsel unqualifiedly assented. In connection with that part of the argument just referred to the defendant took one or two exceptions. But so far as there was error therein, it was apparently rendered harmless by the action of the court. Later the plaintiff's counsel, in arguing the matter of exemplary damages, said the defendant's counsel were afraid the plaintiff would get all he had sued for, three hundred dollars, that they were afraid the jury would settle all differences between the parties and that the plaintiff would get what belonged to him. The defendant's counsel asked for an

exception to this entire line of argument "to save interruption," and the exception was allowed, whereupon the plaintiff's counsel, in explanation or extenuation of his argument, said that counsel for the defendant had claimed that it didn't matter how this case came out because the plaintiff had a note that he could sue on.

No claim was made that the defendant's counsel had not argued as the plaintiff's counsel claimed.

The line of argument of the plaintiff's counsel was clearly improper, and was not fully justified by what it was claimed the defendant's counsel had said. But the exception taken "to save interruption" impliedly asked the court not to interrupt the argument, and an available exception to what is said in argument cannot be saved in that way.

Moreover, when we consider the charge of the court which followed this argument, and the verdict which was in fact rendered, we feel warranted in the opinion, which we hold, that the jury disregarded the unwarrantable suggestions made by the plaintiff's counsel in argument. When the case was first tried the jury assessed the plaintiff's damage at $300. 89 Vt. 346, 95 Atl. 499. The conversion of the property was in 1909, and on the trial now under review, had at the December term, 1915, that is after the lapse of six years or more of time, the actual damages were assessed at $130, a not unreasonable sum in view of all the testimony as to the value of the mare at the time of the conversion. The exemplary damages were assessed at $40. The total of $170, evidently had no reference to the amount of the debt secured by the mortgage, nor to the *ad damnum* of $300, in the plaintiff's declaration. The total of damages was much less than the plaintiff's valuation of the mare at the time of the conversion with simple interest thereon from that time to the time of trial. We may here say in terms, what has already impliedly been said, that this Court takes judicial notice of the proceedings in this case in this Court when the case was formerly here. *Bacon* v. *Boston & Maine Railroad,* 83 Vt. 528, 537, 77 Atl. 858; *Dewey* v. *St. Albans Trust Co.,* 60 Vt. 1, 12 Atl. 224, 6 Am. St. Rep. 84.

Several exceptions were taken to the charge of the court and to its failure to charge in accordance with certain requests.

A further brief statement of the case is a necessary preliminary to a consideration of these exceptions. It sufficiently

appeared that the indebtedness, for which the mortgage in question was security, was a note for $216, given in 1909, on which the sum of $14 only had been paid; that the conversion of the mare by the defendant was the disposal of her to one Stanhope; that Stanhope disposed of the mare to a firm of which one Webster was a member, and that this firm or one of which Webster was a member, disposed of her to one Kennison; that while Kennison had her, the plaintiff put the mortgage into the hands of Herman B. Chapman, a deputy sheriff, for the purpose of a foreclosure sale by such officer under the provision of P. S. 2636; that the plaintiff then went into New Hampshire; that before the time fixed by the officer for the sale, he required of the plaintiff a bond; that the requirement was made by letter; that the bond was not furnished; and that thereafter the officer returned the mortgage and note to the plaintiff, and instead of returning the mare to Mr. Kennison from whose possession he took her, left her in the barn of Mr. Webster, who through his attorney made demand that she be delivered to him; and that the course of the officer in letting the mare go into the possession of Mr. Webster was consequent upon such demand.

The court, in its charge to the jury, in the first place spoke of the mare as having been returned to Mr. Webster, the man from whom the officer took her.

· The defendant excepted to this statement, for the obvious reason that Mr. Webster was not the person from whom the officer took the mare. But this inaccuracy as to the evidence was sufficiently taken care of by the court, when attention was called to it, as the court then referred to the evidence and the defendant's claim with regard to it. *Dow* v. *School District,* 46 Vt. 108; *Green* v. *Dodge,* 79 Vt. 73, 64 Atl. 499.

The presiding judge at the outset of the charge told the jury that this was an action of trover, and also, as he thought, an action of deceit, that there were, as he thought, two counts in the original declaration. He then stated that, in this action, the plaintiff was seeking to recover damages for the conversion of the mare in question, and the whole body of the charge treated the case as simply trover.

The defendant excepted to the statement as to the two counts, one for trover and one for deceit, and his attention being called to the fact that the count for deceit was stricken

out, the presiding judge said he would straighten that matter out.

Numerous exceptions were taken by both parties, and some modifications of the charge were made, but the matter of the two counts was not again referred to, obviously because it was lost sight of.

As the court had told the defendant's counsel that he would straighten that matter out, the defendant's counsel, if they regarded the matter of any importance, should have called the judge's attention to the omission since it was obviously an inadvertent one. *In re Bean's Will,* 85 Vt. 452, 464, 82 Atl. 734. But the matter was of no importance, since the whole body of the charge treated the action as trover and nothing else. *Ide v. Boston & Maine Railroad,* 83 Vt. 66, 85, 74 Atl. 401.

In connection with what the court finally said about the mare's being taken back to Mr. Webster, and not to Mr. Kennison from whom the officer took her, the defendant took exceptions which raised the claim that "the act of the plaintiff in returning the mare to a party other than the one from whom the mare was taken would be such an act of ownership by him as would defeat the lien."

But the evidence tended to show one of two things: Either that the officer declined to go on with the foreclosure proceedings because the plaintiff did not furnish him with the bond which he required, or because the plaintiff directed the officer to return the mare, and the officer, instead of following the instructions of the plaintiff, choose to follow those of a third party, Mr. Webster, and left her on Mr. Webster's premises. In either case the officer was not the agent of the plaintiff in so doing. In taking the mare and proceeding towards a foreclosure sale, he was the agent of the plaintiff, but when, for whatever reason, the proceedings for a foreclosure sale were stopped, he was not the agent of the plaintiff in putting the mare into the possession of Mr. Webster instead of returning her. For he went outside of his official right and duty, either without instructions from the plaintiff either express or implied, or in defiance of the plaintiff's instructions. *Desany v. Thorp,* 70 Vt. 31, 45, 39 Atl. 309; *Hyde v. Cooper,* 26 Vt. 552; *Abbott v. Jewett,* 19 Vt. 551, 47 Am. Dec. 708.

The court told the jury, in substance, that the evidence disclosed that after the mare was taken from Mr. Kennison, a bond

VT.] GREEN *v.* LACLAIR. 33

was demanded of the plaintiff by the officer to secure him in case he went ahead with the sale, that the bond was not given, and that thereupon the officer took the mare back and put her in Mr. Webster's barn. The defendant excepted to this statement on two grounds. The first was that the uncontradicted evidence showed that the mare was not returned because a bond was not given, but because the plaintiff gave direct instructions to his agent to return the mare. There was evidence from which it could fairly be inferred that the matter was as the court stated it. Whether there was evidence tending to show that the plaintiff gave directions to return the mare depends upon the construction to be given certain testimony that we need not reproduce.

As we have already seen, which ever way the testimony is taken, the act of the officer in not returning the mare, but putting her into Mr. Webster's possession, was not the plaintiff's act, but the officer's own. The second ground of exception to the statement of the court was, that the mare was not returned to the party from whom she was taken. This claim amounts to this, that the mare was not returned at all, but was turned over to an indifferent person. But on the defendant's own view of the evidence such act of the officer was against the express directions of the plaintiff, and therefore was not any act of control or ownership by the plaintiff. See the cases above cited.

The defendant excepted to the charge of the court as to the measure of damages, to the failure of the court to charge upon the question of mitigation of damages, and to the failure of the court to comply with certain of the defendant's requests for instructions relative to those matters.

The claims that are both presented by those exceptions and argued in the defendant's brief we now consider. It is claimed that the plaintiff so retook his property, that there was a retaking which should have gone in mitigation of damages, and that plaintiff was entitled to nominal damages only. The general doctrine that the return or recaption of property converted may go in mitigation of damages in an action of trover is well established. *Lyman* v. *James*, 87 Vt. 486, 490, 89 Atl. 932.

But the mere taking of the property by the officer as agent of the plaintiff for the purpose of a foreclosure sale by the officer, was not, without more, such a re-taking as could go in mitigation of damages. For such a taking is merely for the

3

purpose of having the property at the sale and of delivery to the purchaser at the sale. And since the foreclosure sale was not proceeded with, the plaintiff realized nothing to go in mitigation of damages. In this proceeding against the defendant, LaClair, it is immaterial that the plaintiff did not give the officer a bond, if that was the reason why the foreclosure sale did not proceed, or that before the sale the plaintiff directed the officer to return the property, if that was the reason the sale did not proceed, for the plaintiff had a right to abandon that proceeding and sue LaClair, the mortgagor, in trover for his conversion of the property. Nor does the fact that when, for whatever cause, proceedings for a statutory foreclosure sale were abandoned, the officer chose to take instructions from Webster, and leave the property on his premises, instead of returning it to Kennison, affect the question of damages in this action of trover against LaClair the mortgagor. What the relations between Kennison and Webster are or were we have no means of knowing, and in this proceeding it is not material that we should know.

At the close of the evidence, the defendant moved the court to direct a verdict for the plaintiff for nominal damages of one cent. The motion was overruled and the defendant excepted.

Notice of this exception we have postponed until now, since the grounds of it could more conveniently be considered in connection with the exceptions relating to the charge of the court. The motion raised no question not already discussed and disposed of.

*Judgment affirmed.*