STATE *v.* ORLANDO COOLIDGE ET AL.

November Term, 1933.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and GRAHAM, JJ.

Opinion filed February 6, 1934.

184

*Loren R. Pierce* for the respondents.

*Alban J. Parker,* State's attorney, for the State.

THOMPSON, J. The respondents are charged with having conspired to defraud the State of Vermont. There are seven counts in the information. At the close of all the evidence, the court directed a verdict for the respondents on the second, third, and seventh counts. The jury returned a verdict of guilty on each of the four other counts.

G. L. 6606, as amended by No. 130 of the Acts of 1929, provides:

> "A person who kills a Canadian lynx, or a bay lynx, commonly known as a bobcat, in the state, may within thirty days thereafter, exhibit the skin of such animal to the town clerk of the town wherein he resides. Said clerk shall satisfy himself that such lynx was killed in the state. Said clerk shall, when so satisfied and upon payment of a fee of ten cents, give to such person a certificate in the form prescribed by the auditor of accounts. Said clerk shall, upon the giving of such certificate, punch the left ear of such animal in such a manner as to clearly identify it. The town treasurer of such town shall, on presentation of such certificate, pay the person presenting the same the sum of ten dollars."

G. L. 6609 provides that said treasurer shall annually on or before the first of June, present all such certificates received by him to the auditor of accounts, who shall draw an order in favor of such town for the amount of such certificates.

It is alleged in the first count that the respondents, with intent to defraud the State of Vermont, combined and conspired with other evilly disposed persons to obtain by false pretenses from the town clerk of Chester a certificate for the payment of the bounty on three bobcats and thereafter obtain from the treasurer of Chester the sum of thirty dollars; that the respondents were possessed of the skins of these bobcats which were not killed in this State, and which were not killed by one Wilfred Couture; that the respondents delivered said three skins to said Couture, and conspired and agreed with him that he should present the skins to the town clerk of Chester, and falsely represent that he killed said bobcats in this State, and that he was a bona fide resident of the town of Chester, so as to obtain a certificate for the payment of the bounty on said bobcats, and to have him present the same to the town clerk for payment. The allegations in the fourth, fifth, and sixth counts are the same as those in the first count except as to the time

when the alleged offense was committed, the number of bobcats involved, the town clerk upon whom the fraud was perpetrated and the person who actually perpetrated it.

■ ■ The testimony of Alva Martin, an accomplice, who was called as a witness by the State, tended to prove some of the alleged conspiracies. He testified that on two occasions, at the solicitation of the respondents, he obtained certificates for the payment of bounties on bobcats, the skins or bodies of which were furnished to him by the respondents, and which they told him were obtained outside the State, that he obtained the money on the certificates from the town treasurer and gave it to the respondents; that they gave him a certain amount of the money for his services in obtaining it. He was asked on cross-examination: ''How many times have you been arrested?'' The respondents were allowed an exception to the exclusion of the question. There is no error here. The fact that a witness has been convicted of a crime, although it may not involve moral turpitude, is admissible as affecting his credibility. *Underwood* v. *Cray,* 94 Vt. 58, 108 Atl. 513. But proof merely of an arrest is not admissible for that purpose. *State* v. *Sanderson,* 83 Vt. 351, 353, 75 Atl. 961; *State* v. *Hodgdon,* 89 Vt. 148, 150, 94 Atl. 301; *Paska* v. *Saunders,* 103 Vt. 204, 213, 153 Atl. 451. It appears that before this question was asked, the witness testified that he had been convicted of a crime.

■ ■ It appears that in September, 1932, certain officers, accompanied by one Clarence Wiley, a deputy game warden, searched the premises of the respondents under a search warrant for intoxicating liquor; that during the search Wiley found two whole ''old'' bobcats in a bag in the garage where one of the respondents kept his automobile, and that he took them away with him. The skins of those bobcats were received in evidence and there was considerable testimony as to when they were killed and about their ears having been cut off and then sewed on. In the early part of the direct examination of Wiley, the respondents objected and were allowed an exception ''to any testimony as to any evidence that was gathered at Mr. Coolidge's unless it is shown that their warrant was read to Orlando or Richard Coolidge before any search was made''; and they were also allowed an exception to the admission of the evidence on the ground that it was ''incompetent, impertinent and irrele-

vant.'' The objections were renewed later during the direct examination of the witness, and another exception was allowed on the grounds stated. The respondents have not briefed the grounds upon which the exceptions were allowed, and we do not consider them. The respondents contend in this Court that the method by which the evidence was secured was in violation of their rights under the Fourth Amendment of the federal Constitution, and it was not admissible in evidence. This question was not raised below, and we give it no consideration, except to say that this Court has repeatedly and recently held that there is no merit in the contention. *State* v. *O'Brien,* 106 Vt. 97, 170 Atl. 98 (decided January Term, 1934) ; *State* v. *Pilon,* 105 Vt. 55, 57, 163 Atl. 571; *State* v. *Parker,* 104 Vt. 494, 498, 162 Atl. 696; *State* v. *Stacey,* 104 Vt. 379, 401, 160 Atl. 257, 747, and cases cited.

State's Exhibits 1 to 15, inclusive, which are certificates issued by town clerks for bounties on bobcats were received in evidence. When they were offered in evidence, respondents' counsel said that some of them connected with the respondents, but he did not know which ones they were, and he objected to each and every one of the certificates on the ground that they were not sufficiently identified with the respondents; and they were allowed an exception on that ground. Since the respondents conceded below that some of the certificates were admissible, the exception was too general to be of avail. *State* v. *Lapoint,* 87 Vt. 115, 119, 88 Atl. 523, 47 L. R. A. (N. S.) 717, Ann Cas. 1916C, 318.

The respondents were allowed an exception to the denial of their motion for a directed verdict on the fourth count of the information on the ground that there is no evidence of any conspiracy to collect the bounties mentioned in that count.

It is alleged in that count that the respondents conspired with one Allen Parker that he should fraudulently obtain certificates for the bounty on two bobcats, which were not killed in the State, from the town clerk of Andover, and obtain the bounties from the treasurer of that town. It appears that on September 18, 1932, the date alleged in the count, Allen Parker obtained two certificates, State's Exhibits 6 and 7, for the bounty on two bobcats from the town clerk of Andover, and was paid the amount of the bounties by the treasurer of that town.

Allen Parker, who was called as a witness by the State, testified on direct examination that he obtained two certificates, State's Exhibits 6 and 7, from the town clerk of Andover and collected the bounties on them in September, 1932, and that he did not kill the bobcats mentioned in the certificates. He testified on cross-examination that those bobcats were not furnished to him by either of the respondents, and that he never collected any bounties on bobcats for them. He admitted on redirect examination that he pleaded guilty to having presented bobcats which were not killed in the State for bounties, but testified later that he did kill the bobcats in question. That Parker was an evasive witness fairly appears from his testimony.

Alva Martin testified that the respondents told him that Allen Parker took some bobcat skins over to Andover for them and that he had one-third of the bounties that he collected. There is evidence sufficient to warrant a conviction on the fourth count, as there is evidence from which it can be inferred that the respondents obtained those skins outside of the State. The court committed no error in denying the motion for a directed verdict on that count.

■ ■ The court did not err in denying the respondent's motion for a directed verdict on the first count of the information. The ground of this motion is the same as the ground of the motion we have just considered. It is alleged in the first count that Wilfred Couture is the person who obtained the certificates and collected the bounties. It is true, as argued by the respondents, that Couture, who was introduced as a witness by the State, testified that there was no conspiracy between him and the respondents; but the testimony of Alva Martin tends to show that there was such a conspiracy. The gist of their argument seems to be that, because the State introduced Allen Parker and Couture as witnesses, it is bound by their testimony, the same as a party in a civil action is bound by the testimony of witnesses called by him. That is the rule in some jurisdictions, but it is not the rule here. The rule in this jurisdiction is, that the State does not give credence to a witness by introducing him, for it is the duty of the State in criminal trials to produce and use all witnesses within reach of process, of whatever character, whose testimony will shed light on the transaction, whether it makes for or against the accused; and it may

190

claim for their testimony that a part is true and the rest false, according as the jury shall find upon all the evidence. *State* v. *Magoon,* 50 Vt. 333, 339; *State* v. *Harrison,* 66 Vt. 523, 527, 29 Atl. 807, 44 A. S. R. 864; *State* v. *Slack,* 69 Vt. 486, 488, 38 Atl. 311.

The respondents excepted, at the close of the State's argument, to the remark made to the jury in argument by counsel for the State that "the conduct of the respondents had cost them money." The remark was improper, but the right to an exception was waived by the failure of the respondents to claim an exception at the time the remark was made. This Court has held repeatedly that the error in making improper remarks in argument has been cured by offending counsel immediately making an adequate withdrawal of them, and by the court instructing the jury at that time, or later in the charge, to disregard them. If counsel do not except to improper remarks at the time they are made but wait until the close of the argument, offending counsel may have no opportunity to make an adequate withdrawal, and, on the other hand, there is a fair inference that opposing counsel find no fault with the argument. In *Green* v. *LaClair,* 91 Vt. 23, 29, 99 Atl. 244, 248, where an exception was taken to an entire line of argument "to save interruption," this Court said: "But the exception taken 'to save interruption,' impliedly asked the court not to interrupt the argument, and an available exception to what is said in argument cannot be saved in that way."

The respondents were granted an exception to the refusal of the court to charge in accordance with each of their first seven requests to charge. All that is said in their brief is: "These requests were reasonable and the court's failure to charge in accordance therewith constituted reversible error." This is inadequate briefing, and we do not consider the exceptions.

At the close of the charge to the jury, the respondents requested the court to charge that "the testimony of an accomplice should be regarded with a great deal of suspicion; and unless the jury are satisfied beyond a reasonable doubt that the statement of the accomplice is true in every essential particular, the verdict should be not guilty." They were allowed an exception to the refusal of the court to comply with the request.

It fairly appears from the record that the respondents could not have been convicted without the testimony of Alva Martin, who was an accomplice. Passing over the point that the request was out of time, the respondents were not entitled to a compliance with it. The rule that the court should advise the jury to be cautious about giving credit to the uncorroborated testimony of an accomplice is a rule of practice, and not a rule of law, and a failure to comply with it is not error. *State* v. *Hier,* 78 Vt. 488, 492, 63 Atl. 877; *State* v. *Montifoire,* 95 Vt. 508, 514, 116 Atl. 77. The court, when instructing the jury about the credit to be given to the testimony of an accomplice, complied with the rule of practice by telling them that the testimony of an accomplice should be scrutinized with care, and should be checked with the testimony of other witnesses and with circumstances to see whether or not such testimony was corroborated by other circumstances and by the testimony of other witnesses; that it was for the jury to say what weight they would give to such testimony.

██ ██ The respondents asked for and were allowed an exception "to the finding of the jury on counts 1, 4, 5, and 6, as being contrary to the evidence and the weight of the evidence on each and every count." We treat this as a motion to set aside the verdict on the grounds stated. There was no error in denying the motion. It was addressed to the sound, legal discretion of the court, and it does not appear that that discretion was abused. *Wellman* v. *Wales,* 97 Vt. 245, 122 Atl. 659; *Manley Bros.* v. *Boston & Maine R. R.,* 90 Vt. 218, 97 Atl. 674.

G. L. 6610 provides that a person who attempts to obtain a certificate for the bounty on a bobcat through fraud shall be fined not more than twenty dollars. Orlando Coolidge was sentenced to the house of correction for the term of not less than four years and not more than five years, and Richard Coolidge was sentenced to the same institution for the term of not less than three years and not more than four years. They severally excepted to the imposition of the sentences on the ground that they exceeded the penalty provided by law for the offense which it is alleged they conspired to commit.

The statute makes the attempt to obtain a certificate for the bounty on a bobcat through fraud a misdemeanor.

██ ██ We have no statute on the subject of conspiracy, except as to certain combinations which are not material here (G. L. 6792, 6795, 6996), but it was an offense at common law, and consequently is an offense in this State, as that provision of the common law is applicable to our local situation and circumstances, and is not repugnant· to our Constitution or laws. G. L. 1479; *State* v. *Stewart,* 59 Vt. 273, 9 Atl. 599, 59 A. R. 710; *State* v. *Dyer,* 67 Vt. 690, 32 Atl. 814; *State* v. *LaForrest,* 71 Vt. 311, 45 Atl. 225. The crime of conspiracy was a misdemeanor at common law. It is a crime separate and distinct from the offense for the doing of which the conspiracy was formed.

██ ██ The punishment for a misdemeanor at common law, when the law had not provided some other specific penalty, was fine and imprisonment, or either, at the discretion of the court. *State* v. *LaForrest, supra;* 2 Russell on Crimes (6th ed.), 66; 1 Bishop, Criminal Law (9th ed.), § 940; and that is the law of this State. *State* v. *LaForrest, supra.* G. L. 7130 provides that where an offense is declared by law to be punishable by imprisonment, and it is not specified that such imprisonment shall be in the State prison, it shall be construed to mean imprisonment in the house of correction. Since our law provides no specific penalty for the offense of which the respondents were convicted other than that provided by the common law, there was no error in the sentences imposed upon them. *State* v. *LaForrest, supra.*

We find no error in the proceedings of the court below.

*Exceptions overruled. Let execution be done.*