### Leonard J. Abbadessa v. Andrew Tegu et al

[173 A.2d 153]

May Term, 1961

Present: Hulburd, C. J., Holden, Shangraw, Barney and Smith, JJ.

Opinion Filed July 6, 1961

*Richardson & Caldbeck* for the plaintiff.

*Witters, Longmoore, Akley & Brown* for the defendants.

**Hulburd, C. J.** The plaintiff is seeking to recover a penalty in a *qui tam* action pursuant to 9 V.S.A. §2282. The defendants, he says,

were parties to certain fraudulent and deceitful conveyances made to avoid a debt or duty owing to the plaintiff and so became liable in an action of tort on the statute for the value of the two pieces of real estate concerned. One of these pieces of real estate was a camp site, with a cottage on it, in the town of Westmore, Vermont, the other was the defendant's homeplace in St. Johnsbury, Vermont. The trial court restricted its submission to the jury to the camp property. It took the position, on its own initiative in the course of the trial, that the transfer of the homeplace could in no event be fraudulent because of the defendants' homestead rights in such property. The plaintiff attempted to show that the transfer was fraudulent as to the value in excess of the homestead interest, claimed to be some $20,000 above the statutory $2,500 exemption.

It is true that a fraudulent conveyance cannot be predicated on homestead property. One cannot be said to be seeking to avoid creditors by conveying only property which is exempt from attachment anyway. *Danforth* v. *Beattie,* 43 Vt. 138, 141; *Darling, Adm'r.* v. *Ricker,* 68 Vt. 471, 473, 35 A. 376; *Morse* v. *Andrews,* 112 Vt. 456, 457, 28 A.2d 393. But this is far from saying that persons who own real estate, of which a homestead is a part, may claim an exemption of the excess of the limitation of $2,500 in value; nor is a conveyance by the owners of their entire holding immune from attack as being fraudulent merely because the subject matter of the conveyance includes, in part, the homestead of the grantors. The statutes specifically provide for levy on real estate, a part of which may consist of the homestead. 27 V.S.A. §102. The record does not disclose the impracticability of setting out a homestead from the remaining real estate in this case. Such an impracticability, if it exists, would not mean that an execution creditor would be entirely thwarted from satisfying his claim out of such real estate. If necessary, he could reach the excess over the limitation of $2,500 in value, allowed for a homestead, by proceeding in accordance with the provisions set forth in 27 V.S.A. §181 *et seq.* It follows that the trial court was in error when it ruled that the plaintiff could not go into the matter of the value of the homeplace. When it went on to rule, as a matter of law, that the transfer of the homeplace could not be fraudulent because it contained the defendants' homestead, and could not be the basis

for the recovery of a penalty in any event, the court largely undermined the plaintiff's cause of action.

■ The plaintiff's evidence had been that all real estate was standing in the name of Andrew Tegu and that, as to the camp, defendant Andrew Tegu had conveyed this property to his attorney, Harry Witters, who had in turn reconveyed it back to Andrew Tegu and his wife, Erma Tegu, as tenants by the entirety; that as to the homeplace, defendants Andrew Tegu and Erma Tegu had conveyed the premises to Witters, and he had in turn reconveyed this property to Andrew Tegu and Erma Tegu as tenants by the entirety. Since the latter property contained the homestead, Erma Tegu was a necessary grantor in the deed to Witters.

■ By eliminating the homeplace from consideration, the court below left the plaintiff only the camp property to deal with, as to which Erma Tegu had not been a grantor. It was essential to the plaintiff's case to show that both the grantor and the grantee had a fraudulent intent and that they were combining and intending to avoid the right, debt or duty of another. *Brooks* v. *Clayes and Morse,* 10 Vt. 37, 50, 31 Am. Dec. 605. Both conveyances followed the same pattern. Attorney Witters was a conduit of title in each case. In connection with the transaction involving the homeplace, Erma Tegu was necessarily present as a grantor at the time of its conveyance on August 3, 1955. When this property was eliminated from the consideration of the jury by the court, the plaintiff was deprived of a basis for exploring the circumstances of this deed. Anything which the plaintiff may have developed tending to show a fraudulent intent to defeat the claims of the plaintiff by the defendants by this conveyance would have been entitled to consideration in connection with the conveyance of the camp some three months later by the deed dated November 17, 1955 which employed a similar pattern. An inquiry into the circumstances of the earlier conveyance of the homeplace might well have thrown light on the later conveyance. Thus it is that the court's ruling prejudiced the plaintiff's entire case. It left the conveyance of the camp property, standing alone, to be considered by the jury rather than what might have been argued to the jury as a part of a systematic scheme. The evidence had tended to show that Andrew Tegu had divested himself of all real estate and tangible

property in 1955 as he testified, "In fact, I am pretty sure I didn't have any other thing personal." We entertain no doubt that the trial court's error necessitates a reversal.

■ Certain other exceptions should probably be briefly considered in order to furnish guidance on re-trial. In the first of these, counsel for the defendants asked defendant Andrew Tegu: "Have you or your wife ever commenced any divorce actions against each other?" The plaintiff objected to the admission of this evidence. There followed a discussion between court and counsel as to whether love and affection could be a consideration under the law of fraudulent conveyances. The court allowed the question to be answered as well as other questions along this line. The background against which the evidence came in tended to give the jury to understand that if the conveyances had love and affection as a consideration they were precluded from being fraudulent. This is untrue. The basic proposition has been well put as follows: "A debtor's unexempt property belongs to his creditors, and their legal demands must be satisfied before the debtor gives such property to others." *Murphy* v. *Casey*, 157 Minn. 1, 195 N.W. 627. Love and affection furnish no exception to this rule. Since it was not claimed that the conveyances had any consideration other than love and affection, they were voluntary conveyances, that is, conveyances without consideration. See 37 C.J.S. Fraudulent Conveyances, §169 and cases cited. Even very great love could not make them otherwise. The purpose for which the evidence was apparently received was improper and we have no doubt was misleading to the jury.

Plaintiff's next exception goes to the same proposition, *i.e.* to the admission of testimony relative to the way defendant, Erma Tegu, conducted herself around the house. It was equally inadmissible.

■ The plaintiff's fourth exception has to do with the exclusion by the trial court of a question asked of the defendant on cross-examination. It is enough to say that the question, though valid in substance, was faulty in form because it contained the conclusion of the interrogator. *State* v. *Teitle*, 117 Vt. 190, 196, 90 A.2d 562.

The plaintiff's next exception pertains to the exclusion of a question on the cross-examination of defendant Andrew Tegu. It is sufficient to say that the trial court's ruling, based apparently on the ground of remoteness, was of doubtful propriety in view of the evi-

dence leading up to the question. Thereafter counsel for the plaintiff, having asked a question and received without objection a responsive answer, was addressed by the court as follows:

> The Court: Mr. Caldbeck did you understand the court's ruling?
>
> Mr. Caldbeck: I certainly did, your Honor.
>
> The Court: You don't have to speak up to the court. You will abide by it and you need not proceed with that type of questioning.
>
> Mr. Caldbeck: I would like to make an offer.
>
> The Court: You don't need to make an offer. I know what you are going to offer. You can proceed on any ground there except you had. (sic)

■ Such an exchange was most unfortunate. But it was more than that. By it, the plaintiff was deprived of an opportunity to make an offer of what he was attempting to show. To be sure, on cross-examination counsel was not obliged to make an offer. See *Knapp* v. *Wing,* 72 Vt. 334, 340, 47 A. 1075; *Green* v. *LaClair,* 91 Vt. 23, 27, 99 A. 244. This does not mean, however, that counsel is to be denied an opportunity if he cares to do so. An offer may well be made not for the benefit of the trial judge alone but for the record. The trial judge may require that it may be made at the bench, but he may not suppress it altogether. Indeed, under our present procedure, it is always in order to make it appear in the record the action which a party desires the court to take. This is the manner in which a basis for appellate review is laid. 12 V.S.A. §2381. It is to be expected that the irritations and frustrations experienced by court and counsel alike should occasionally erupt in some unpredictable manner. Where this occurs, however understandably, if, as here, legal rights have been abrogated, this Court has no alternative but to send the case back for retrial. Since we have already indicated that reversible error has occurred elsewhere, it would serve no purpose to consider whether the action of the trial court in the special circumstances of the case was prejudicial error.

■ The plaintiff's final assignment of error is in connection with a letter written by the defendants' attorney. A little background is necessary to understand its significance. Defendant Andrew Tegu had testified to some length that at the time he made the conveyances in question (November 17, 1955) he had assets of over one hundred

thousand dollars by way of his holdings in a number of inter-operating corporations of which he was a shareholder. When counsel for the plaintiff came to cross-examine Mr. Tegu, he stated, at the bench, that he proposed to interrogate the witness as to whether or not his financial condition in November 1955 was substantially the same as that outlined in a letter (No. 12) written July 2, 1957 by his attorney. Now the letter set forth Mr. Tegu's financial situation in July 1957, showing large sums due, taxes unpaid, and the stock about which Mr. Tegu had testified, and upon which he had based his worth, as being held in pledge for his indebtedness. Attorney for the plaintiff quite logically argued to the court that if the witness should admit on the witness stand that his financial condition in July 1957 was substantially the same as in November 1955 it was not a "picture of affluence" as he had made out in his previous testimony. The trial court excluded this entire line of inquiry. One of the matters troubling the trial court, no doubt, was that the letter had been written by Tegu's attorney in connection with the settlement of another case. The letter contained no offer of settlement for any case. It simply gave, as a fact, figures relative to Mr. Tegu's financial condition and then concluded, "We would appreciate a prompt answer to the proposition which we submitted yesterday." This is not the case of where a statement of facts is so integrated with an offer of compromise as to be inseparable from it and so inadmissible. In fact the offer had been made upon a different occasion and was definitely divorced from it. We think the court was in error in excluding this line of testimony. *Doon* v. *Ravey,* 49 Vt. 293, 296; 31 C.J.S. p. 1047; 20 Am. Jur. p. 478. The fact that the statement would probably not have been made at all except on the assumption that it would facilitate a settlement does not render it inadmissible. *Rose* v. *Rose,* 112 Cal. 341, 44 P. 658. By its ruling the trial court cut off what might have been most effective cross-examination of a party on an important aspect of the case. This was error. *Knight* v. *Willey,* 120 Vt. 256, 261, 138 A.2d 596.

Having thus abridged the plaintiff's right of cross-examination, the court then turned to the witness and asked: "The court has one question, Mr. Tegu. Did you on November 17, 1955 by transferring your camp property into the names of yourself and your wife intend to cheat or defraud Mr. Abbadessa with relation to any rights which he had against you under the lease of 1951?" To which Mr.

Tegu answered, "I did not." This was a most unfortunate inquiry to substitute for cross-examination. It was the ultimate question which was for the jury to decide under proper instructions of the court. It allowed the defendant in his answer to supply or employ his own definition of terms. See 20 Am. Jur. Evidence §765 and cases cited.

This completes the review of the questions brought before us.

*Judgment reversed and cause remanded.*