## State of Vermont v. Gilbert E. Ross

[290 A.2d 38]

No. 72-71

Present: Shangraw, C.J., Barney, Smith, Keyser and Daley, JJ.

Opinion Filed April 4, 1972

*M. Jerome Diamond,* State's Attorney and *J. Garvan Murtha,* Deputy State's Attorney, for the State.

*Thomas P. Salmon,* Bellows Falls, for Defendant.

**Keyser, J.** The defendant was convicted of operating a motor vehicle on a public highway while under the influence of intoxicating liquor after a jury trial in the Windham Circuit of the Vermont District Court. Defendant's appeal raises two issues.

> "1. Was the defendant denied a fair and impartial trial because of certain remarks made by the state's attorney in his rebuttal argument to the jury?
> 2. Did the court err in admitting the result of the chemical analysis of defendant's urine sample?"

The state's attorney made three statements in his rebuttal argument which the defendant claims were prejudicial and denied him a fair and impartial trial because they were either the personal belief of the state's attorney or not supported by the evidence. These remarks were as follows:

> "He [defense counsel] said why would a man who has been driving a truck for most of his life drink 16 ounces

of liquor in 11 hours before he has to go on the job? And I think the answer to that question is quite clear. Because he's sick. Because this man is sick from alcohol, and it's your job to start the process of bringing that man some help by bringing the reality to him that it is a problem and that he does not realize how bad it is."

"That's hard to believe that anyone could drink that fast, unless—unless, ladies and gentlemen of the jury, he has got an illness."

The closing sentence of the argument was:

"Nobody else has said it, but I'll say it, it's hard to believe that that man was not 'bombed' when he passed out."

"Ladies and gentlemen of the jury, it is your responsibility to see that this man begins to get some help, because if you don't, the next time, it may be one of your children who is walking up School Street, because there was no sidewalk, and gets killed."

The defendant did not object to these arguments at the very instant they were made. However, immediately upon the conclusion of the state's attorney's argument and before the court's charge to the jury, the defendant requested an instruction by the court to the jury based on the argument. He stated to the court:

"We would request the court to instruct the jury that there is not so much as an iota of evidence in this case that Gilbert E. Ross, the defendant, is sick or suffers from any form of alcoholic problem. The insertion of this argument we feel was highly prejudicial to this case, unsupported in any respect by the evidence."

It is said at 53 Am. Jur. *Trial* § 500:

". . . [W]here counsel goes beyond an appeal to the jury to do their duty and enforce the law and urges a conviction because of extraneous considerations, or states facts and conclusions not supported by the evidence, and urges a conviction by reason thereof, the argument is improper, and may furnish a sufficient ground for a new

trial or a reversal." See also Annot., 78 A.L.R. 1438, 1466 (1932).

■ The state claims the defendant waived "the right to an exception" by his failure to claim an exception to the argument at the time it was made, citing *State* v. *Coolidge*, 106 Vt. 183, 190, 171 A. 244 (1933). Since that case was decided the necessity for formal exceptions was abolished in 1959 upon the passage by the legislature of 12 V.S.A. § 2381, now (since July 1, 1971) V.R.C.P. 46.

The request was proper and sufficiently specific and definite and made known to the trial court the action the defendant desired the court to take. What the defendant stated called the attention of the court in a manner and apprised the court of the exact point to which it was directed and gave the court an ample opportunity to deal with it. See *State* v. *Schoolcraft*, 110 Vt. 393, 396, 8 A.2d 682 (1939). This is the manner in which a basis for appellate review is laid. V.R.C.P. 46 (formerly 12 V.S.A. § 2381); *Abbadessa* v. *Tegu*, 122 Vt. 338, 173 A.2d 153 (1961). Since the state's attorney did not deem it appropriate for him to take curative action concerning his argument, the trial judge should have heeded the defendant's request to charge. Considering the situation as presented, we hold that this case has all the ingredients of complying with *State* v. *Coolidge, supra,* 106 Vt. at 190.

■ It is self-evident that the remarks of the state's attorney were to brand the defendant as an alcoholic in dire need of treatment and "help" for a drinking problem. The evidence fails to reveal that the defendant was a person generally addicted to the excessive use of alcoholic liquors. These remarks were obviously inflammatory, wholly improper and uncalled for on any legal issue in the case, and not warranted by the record. They could only serve to prejudice and tend to unfairly influence the jury against the defendant. The general charge to the jury that "what the attorneys say" is not evidence did not reach the substance of defendant's request and could not be said to have the corrective action requested.

■ In light of the fact that the court took no corrective measures even though requested by the defendant, we hold that there must be a reversal of the conviction and the de-

fendant afforded a new trial. Under the circumstances the constitutional right of the defendant to a fair and impartial trial was placed in serious jeopardy. 88 C.J.S. *Trial* § 196(b).

The state argues that the state's attorney's remarks were based upon evidence introduced by defendant's counsel through his cross-examination of two state witnesses. This argument is without avail. A careful reading and consideration of the testimony cited in the state's brief fails to support the state's argument. What little testimony is pointed out to us does not merit in any manner the interpretation the state claims for it. We find no direct evidence, or, in fact, any evidence which establishes or even hints that the defendant has an alcoholic illness or problem and needed the help of the jury to bring him to realize that it was a problem—a matter entirely immaterial to any issue in the case. The few questions asked by defendant's attorney related solely to whether the defendant at the time he was found in his car might be sick and needed a doctor, which is a far cry from saying what the state's attorney did to the jury.

The state further attempts to justify the comments made by the state's attorney by its claim that they were not an expression of personal belief. The fallacy of this argument is readily seen from an examination of what the state's attorney said, such as, "because he's sick", "because this man is sick from alcohol", "that it is a problem", "unless he's got an illness." There being no support in the evidence for such remarks, we can only conclude that they were an expression of the personal belief or opinion of the state's attorney.

The defendant's second assignment of error relates to the admission into evidence of the chemical analysis report of the defendant's urine sample. He claims the state failed to lay a proper foundation for its admission by proof of every link in the chain of evidence to identify the specimen given by the defendant as being the same one received by the chemist at the state laboratory.

Since the case is to be remanded and may result in a retrial, this issue may again arise and, therefore, we will pass upon the merits of the exception.

Concerning the "chain of evidence" that must be shown to permit the results of a test to be available as evi-

dence is stated by R. Erwin, Defense of Drunk Driving Cases § 27.01 (3d ed. 1971), as follows:

". . . [T]he identity of the specimen need not be proved beyond all possibility of doubt, that the circumstances néed be such to establish a reasonable assurance of the identity of the specimen, and that all possibility of tampering need not be excluded—the above being especially true where there is no evidence to create a suspicion that the sample was other than that taken or that there was a long, unexplained time lapse involved."

This is the view followed by Vermont and many other jurisdictions. Recognizing this view, this Court said in *State* v. *Auger,* 124 Vt. 50, 57–58, 196 A.2d 562 (1963):

"The identification and authentication of the blood sample is a factual issue, so long as enough is shown to allow a trial court to rule favorably on its relevance, and also on its admissability as against any possible prejudice to the respondent. As Justice Blandin of New Hampshire put it in a case involving this very point, citing 21 A.L.R.2d 1216, 1235–6: 'The ultimate question remains whether on all the evidence it could be found that the blood analyzed by the State chemist was the defendant's blood.' *State* v. *Fornier,* 103 N.H. 152, 167 A.2d 56, 57 [1961]."

The defendant questions both the procedure in handling the sample of urine taken from him for the purpose of testing it for alcoholic content and the evidence presented concerning those procedures. He points out that the police officer who conducted the taking of the sample was not present to testify; the only testimony concerning the taking being that of an officer who witnessed this operation and assisted in sealing and labeling the container into which the sample of urine was placed.

The defendant claims that the fact that the container was placed in a drawer of the chief of police more than one person could have had access to it. It has been held in several jurisdictions that the fact that unidentified persons may have had access to the sample prior to testing does not raise the pre-

sumption that the sample may have been tampered with and thus, not in the same condition or not to be identified as the sample that was in fact taken from the respondent. See *Patterson* v. *State,* 224 Ga. 197, 160 S.E.2d 815, 817 (1968); *State* v. *Coburn,* 82 Idaho 437, 354 P.2d 751, 757 (1960); and *State* v. *Michael,* 141 W.Va. 1, 87 S.E.2d 595, 603 (1955). In all of these cases, the samples had been sealed and labeled and had been placed in hospital refrigerators to which unidentified persons had access prior to testing. The person who finally tested the samples found them sealed and labeled upon removing them from the refrigerator.

In the case at bar, the sample was sealed and labeled at the time it was placed in the drawer, and was still sealed and labeled when received for testing by the chemist at the state laboratory. The reasoning allowing the admission into evidence of the results of the test of a sample under such circumstances is best summed up in *Patterson* v. *State, supra,* 160 S.E.2d at 817:

> ". . . The identity of such blood samples need not be proved beyond all possibility of doubt or that all possibility of tampering with them be excluded. The circumstances need only establish reasonable assurance of the identity of the sample [citations omitted]."

The circumstances surrounding the shipment of the sample to the state laboratory brings this fact situation very close to the fact situation in both *State* v. *Auger, supra,* and *State* v. *Fornier, supra.* In the *Auger* case there was no direct testimony concerning the situation of the sample from the time it was mailed to Burlington by the trooper and the time that it was delivered to the chemist for testing. In that case, 124 Vt. at 57, the Court quoted from the *Fornier* case, *supra,* as follows:

> ". . . [T]here was no testimony from the doctor or the trooper about labeling or marking the sample; neither tube nor container were introduced into evidence; nor did all the persons who handled the specimen testify."

However, in both the *Auger* and *Fornier* cases, as in the one before us, the specimen and the container came into the

hands of the chemist with the seal on the container unbroken and the label intact. Again, in referring to the *Fornier* case 124 Vt. at 58 of the *Auger* case, Justice Barney for this Court stated: "The sound, practical reasoning of that case commends itself to us."

The admission of the report of the analysis by the trial court was proper and without error.

*Judgment reversed; cause remanded.*