STATE *vs.* ARCHILLE GREGOIRE.

MARCH 11, 1959.

PRESENT: Condon, C.J., Roberts and Paolino, JJ.

402

ROBERTS, J. This is a criminal complaint charging the defendant with operating a motor vehicle on a public highway in the town of East Providence while under the influence of intoxicating liquor. The case was tried before a justice of the superior court sitting with a jury which found the defendant guilty. The case is here on the defendant's bill of exceptions.

It appears from testimony which was not substantially contradicted that on December 16, 1955, about 11:30 a.m.,

a police officer observed defendant's automobile mount a curb on Willett avenue near Lyman street in the town of East Providence. The officer pursued the automobile for approximately a mile, during which time defendant was traveling between 15 and 20 miles per hour. The officer used his siren "a few times" and defendant eventually pulled over to the side of the road. Police Captain Francis E. Shanley arrived at the scene and under his direction defendant was taken to a police station. The police made several unsuccessful attempts to obtain the services of a physician to examine defendant. With his consent a breath test, so called, was administered to him by use of an instrument known as an Alcometer.

At the trial three witnesses testified as to defendant's appearance and conduct, and such testimony tended to establish circumstances which would give rise to the inference that he was under the influence of liquor as charged. Captain Shanley testified with respect to his administration of the Alcometer test and, over the strenuous objections of defense counsel, was permitted to testify as to the results of this test. The largest portion of the record consists of the testimony of Mario Castillo, a research chemist and designer of scientific instruments. He testified at length as to the Alcometer, which he had helped to design and perfect. This witness went into much detail with respect to the scientific principles underlying the "breath test," the background, theory and operation of the Alcometer, and the alleged significance of the results obtained from this instrument.

The defendant has briefed and argued many of the seventy-two exceptions contained in his bill. These include exceptions to the denial of his motions for a directed verdict and for a new trial, to rulings upon evidence made during the course of the trial, and to portions of the charge to the jury. Because of the view which we take on the legal issues herein, our consideration will be limited to those

exceptions which concern the admission in evidence of the results of the Alcometer test.

The defendant's exceptions numbered 31, 32, 33, and 34 pertain to the ruling of the trial justice whereby he admitted in evidence the testimony of Captain Shanley concerning the reading of the Alcometer following the "breath test" consented to by defendant. His testimony followed that of Mario Castillo, the expert witness for the state, concerning the scientific reliability of the instrument and the manner of its operation. The expert had testified that a reading on the machine would, by the application of scientific principles, indicate the concentration of alcohol in the blood stream of the subject. He explained the specific steps which must be used in the operation of the machine and the process by which a reading is obtained. He testified that the Alcometer had been designed so as to permit its operation by a person of ordinary intelligence. Captain Shanley then took the stand and testified that in 1949, during a two-week course in police training, he had received approximately three hours of instruction in the operation of this instrument, and that he later received supplementary instructions on "how to run" it. He then proceeded to describe the steps which he used in administering the test in this case.

The defendant first contends that, apart from the scientific reliability of this instrument, evidence relating to the Alcometer reading should not have been admitted because the police officer who administered the test was not shown to be qualified. In admitting the evidence the trial justice stated: "Any man with ordinary intelligence could follow instructions given and see to it that it was kept in proper order and being operated correctly. Therefore, I don't think the point of the captain's alleged disqualification carries any weight with me." In our judgment this ruling was error.

The general rule is that scientific tests, in order to be

admissible as evidence, must have been conducted by one who is expert in the particular branch of science concerned. Wigmore, Science of Judicial Proof (3d ed.), §220, at page 450. See *State* v. *Nagle,* 25 R. I. 105. The issue before us is whether this general limitation upon the admissibility of scientific evidence applies to the particular instrument used in the case at bar.

The evidence here indicates that the Alcometer analyzes the breath of the subject and by such analysis yields a reading which reflects the concentration of alcohol in the blood stream. Evidence of similar "breath tests" conducted on machines other than the Alcometer has been admitted in other jurisdictions. *People* v. *Bobczyk,* 343 Ill. App. 504; *People* v. *Kovacik,* 205 Misc. (N. Y.) 275; *Jones* v. *State,* 159 Tex. Crim. 29. 2 Wigmore, Evidence (3d ed.), §235. Although "breath tests" are based on the same chemical principles, there are differences among the specific instruments which are used to make such tests. Compare *Jones* v. *State* with *People* v. *Bobczyk.* See 51 Mich. L. Rev. 72.

In *Hill* v. *State,* 158 Tex. Crim. 313, evidence of a test administered on a Drunkometer, so called, was excluded on the ground that the witness who had administered the test was not shown to be qualified; it had previously been held in the jurisdiction that evidence of such test was admissible in proper circumstances. See also *People* v. *Davidson,* 5 Misc.2d (N. Y.) 699. Admittedly, the reasoning in the above cases does not necessarily apply to a test on the Alcometer because of the differences between this instrument and the Drunkometer. Nevertheless we think that the same general rule governing the use of scientific instruments should be adhered to in this case. The mere presence in the record of an opinion that the instrument does not require expert operation is insufficient to alter the legal rule which is designed to insure the reliability of scientific evidence.

An examination of the record supports the conclusion

that the requirement of a qualified operator in the administration of the test is vital to the reliability of the evidence in this case. The trial justice emphasized the general statement of the expert as to the unimportance of a specially qualified operator. In the course of his testimony, however, that same expert witness conceded that the readings on the instrument would vary according to the manner in which the Alcometer was operated. He gave the opinion that he himself could obtain more accurate results in operating the instrument than an operator who was less familiar with the mechanism.

He further testified that the conditions under which the test was given could affect the results. At one point he stated: "* * * if the Alcometer is improperly cared for, if it is not inspected periodically as determined by the manufacturer, the conditions can depart so far from ideal I wouldn't trust a single result obtained from it." He further stated that the precision with which the instrument is adjusted by the operator is vital to a correct reading. Finally he agreed that the reading of .38 per cent obtained in this case was so high as to indicate an alcoholic influence which would be inconsistent with the conduct of defendant as testified to by the eyewitnesses.

Assuming without deciding that the Alcometer is scientifically reliable, we feel that the evidence obtained therefrom by Captain Shanley was improperly admitted in this case. The requirement that the scientific instrument be operated by a trained, qualified person is generally applied when a new device is presented for the consideration of the courts. *State* v. *Dantonio,* 18 N. J. 570. See also *Cortese* v. *Cortese,* 10 N. J. Super. 152. The rule is a basic protection of the trustworthiness of evidence which depends on special expert knowledge. Wigmore, Science of Judicial Proof, §220.

The question of whether a witness is qualified to testify as an expert is within the sound judicial discretion of the

trial justice. *Baffoni* v. *Baffoni*, 77 R. I. 232. In the instant case he did not pass upon the qualifications of the witness but, after stating that the question of his qualification was immaterial, he permitted him to testify. It is clear from what appears in the transcript that the witness was not shown to have had any substantial training or experience in the functioning of the machine. In fact he was not shown to be an expert. Therefore, we are of the opinion that the trial justice abused his discretion in admitting such testimony.

Much of the record and the arguments of counsel concerned the scientific reliability of the Alcometer. Because of the views above expressed, it is not necessary to decide this question at this time. It might, however, be pointed out that judicial reliance upon such a device depends upon general acceptance of its reliability by experts in the relevant scientific field. Wigmore, Science of Judicial Proof, §220.

Several other exceptions taken during the course of the trial have been vigorously pressed before us. Our conclusion that the results of the Alcometer test were erroneously admitted in evidence is sufficient to warrant the granting of a new trial. Therefore, we will not pass upon the other exceptions inasmuch as the issues which they raise may not be relevant in a new trial.

The defendant's exceptions numbered 31, 32, 33, and 34 are sustained, and the case is remitted to the superior court for a new trial.

*J. Joseph Nugent*, Attorney General, *Raymond J. Pettine*, Assistant Attorney General, for State.

*Aram A. Arabian*, Public Defender, for defendant.