## State of Vermont v. Jacqueline Auger

[196 A.2d 562]

October Term, 1963

Present: Hulburd, C. J., Holden, Shangraw, Barney and Smith, JJ.

Opinion Filed December 3, 1963

*Robert D. Rachlin,* State's Attorney for the State.

*Joseph S. Wool* for the respondent.

**Barney, J.** The State, by an appeal before judgment on the verdict, seeks to test the validity of the trial court's exclusion of a blood analysis in a driving-while-intoxicated matter, instituted under the "implied consent" law. 23 V.S.A. §§1188-94.

The first challenge to the appeal is a motion in this Court to dismiss because the certification from the Caledonia Municipal Court did not set out in writing the questions of law sought to be reviewed as required by Supreme Court Rule 2A. Permission to appeal was granted by the trial court on July 27, 1962. The rule in question was not promulgated until April 9, 1963, and could not apply to this case. Accordingly, the respondent's motion to dismiss is denied.

The State has briefed only the question of the propriety of the grounds of the trial judge's exclusion of the blood analysis evidence. The respondent takes the position that the question of a new trial is now out of the case, since the State failed to brief the denial of its motion for a new trial. This happens to be of little significance here, because, if the State establishes that evidence of the blood test should have been admitted, a new trial will follow as a matter of course. The respondent offered no evidence in her own behalf and did not take the stand. The evidence relative to the issues raised here all came from witnesses put on by the State and may be summarized as follows:

The respondent was questioned by a state police officer by the side of the road in Hardwick, Vermont. She acknowledged that she had been driving the car parked there off the travelled portion of the highway. The trooper asked her if she would accompany him to St.

Johnsbury where she would be examined by a doctor. She readily consented, and the trip was made. Upon arrival at the doctor's office the respondent was informed of the three types of tests indicated by the statutes: blood, urine and breath analysis. (12 V.S.A. §§1188 and 1194.) After the tests were explained the respondent consented to having her blood tested for alcoholic content.

The doctor took a blood sample, placed it in two glass test tubes and passed it to the trooper. The officer then inserted the stoppers and put a gummed label with his signature and the date on it over each stopper as a seal, in such a manner that the stopper could not be removed without breaking the seal. The samples were placed in cardboard mailing tubes and again sealed, then placed in a mailing envelope with another gummed label seal in place over the sealed gum envelope flap. The package also contained a form filled out by the doctor identifying the person from whom the blood was taken, and giving the time, place and occasion for the taking of the blood.

The trooper mailed this kit by registered mail to the state health laboratory. Although the person who signed the registry receipt and picked up the kit at the post office in Burlington was not identified, the chemist for the state laboratory testified that all of the seals were intact and unbroken when he received the kit. One of the two tubes was opened and analyzed by the chemist, then the analysis and the remaining blood sample were turned over to the custody of the laboratory director.

The respondent objected to the admission of the blood analysis on several grounds. One of these turned on the fact that the sample of blood withdrawn for the possible use of the respondent was kept at the state laboratory, rather than by either the state trooper or the examining physician. The trial court sustained this objection and excluded the blood analysis evidence on this ground.

The position of the respondent is based upon these two statutory sections:

§1190. Who may make test

Only a physician acting at the request of an enforcement officer of the department of public safety or at the request of the chief of police of a town, city, or incorporated village or county sheriff may withdraw any blood of any person submitting to a chemical test under sections 1188-1194 of this title and said physician must

act in a careful and prudent manner in said blood withdrawal. A sufficient amount of blood shall be withdrawn to enable the person, at his option, to have made an independent analysis of his blood. Evidence of such test shall be inadmissible unless such enforcement officer, chief of police or county sheriff shall, prior to the taking thereof, have advised such person of the optional tests available to him under section 1194 of this title.

§1194. Optional test

At the option of the person, instead of the chemical test of his blood above referred to, he may submit to a urine test or a breath test to be taken by said physician or an enforcement officer of the department of public safety, provided said optional test shall be such as to make available to such person a current sample ' sufficient in substance or amount to enable such person to have an independent analysis to determine the alcoholic content of said sample and the percentages thereof referred to in section 1189 of this title. Such person's sample shall be held by the physician or officer as the case may be for a period of thirty days from its taking, for the purpose of such person's analysis and if not called for in that period of time may be destroyed.

The respondent's construction requires that the portion of section 1194 relating to the preservation of urine and breath specimens be read back into section 1190. Perhaps it is enough to say that the language of these sections, as they stand, does not require the retaining of a blood sample by the doctor or state trooper.

Such a reworking of statutory language will not be undertaken if the statutory provisions, as they stand, are meaningful in connection with their avowed purpose. The use of blood analyses in these cases long antedates the present statutes. See *State* v. *Gignac*, 119 Vt. 471, 129 A.2d 499. The analyses have been regularly carried out and the blood samples stored by the state laboratory as one of its duties. This may have influenced the legislature to leave this practice intact by omitting the requirement that the physician or officer concerned retain the sample of blood, even though it specified that there be such a sample available for the respondent. 23 V.S.A. §1190.

An indication that sections 1190 and 1194 are not to be read together in this connection arises from the action of the 1963 legisla-

ture in amending only section 1190 so as to include police chiefs and county sheriffs among those authorized to request blood tests. No. 103 of the Acts of 1963. A corresponding enlargement of section 1194 was not made. If the respondent's view is adopted, the statutory language leaves unanswered the propriety of a police chief or sheriff keeping custody of a blood sample.

Furthermore, the language of section 1194 indicates that either a physician or an enforcement officer of the department of public safety can administer the urine and breath analysis tests. Without evidence of the mechanics of these tests, we will not say this is so, but the statutory words suggest this may be the case. This may explain why the amendment of section 1190 was not extended to section 1194. There appears to be sufficient difference in the administration of blood tests and urine and breath tests to induce the legislature to make special provision for the preservation of urine and breath samples for the benefit of the respondent. Intermingling the provisions would disrupt this statutory pattern unnecessarily and to no advantage. The exclusionary ruling of the trial court cannot be supported on these grounds.

The respondent calls our attention to other grounds raised below which she says support the exclusion of the blood analysis evidence. If that exclusion was proper on any ground, the State has no basis for complaint and the respondent is entitled to retain the benefit of the "not guilty" verdict. This is merely a more forceful application of the principle which permits affirmance if the questioned ruling can be supported on any legal ground. *State* v. *Rowell,* 120 Vt. 166, 170, 136 A.2d 349.

It is the respondent's claim that the blood-taking procedure prescribed by the statutes was violated in two other particulars. She says that since *State* v. *Ball,* 123 Vt. 26, 179 A.2d 466, set up a requirement of strict compliance with these procedures, either violation supports the exclusion of the blood test results.

Her first claim of impropriety revolves around the language of 23 V.S.A. §1188, titled "Consent to blood test implied":

Any person who operates or attempts to operate a motor vehicle upon a public highway in this state is deemed to have given his consent to submit to a chemical test of his blood or

such other test as herein provided for the purpose of determining the alcoholic content of his blood whenever he is arrested or otherwise taken into custody for any offense involving his operation of a motor vehicle under the influence of intoxicating liquor or drugs, and the arresting officer has reasonable grounds to believe that the person was operating the motor vehicle under the influence of intoxicating liquor or drugs.

It is undisputed that the respondent in this case was not under arrest at the time the blood sample was taken. It is also undisputed that the respondent consented to the taking. The case of *State* v. *Ball, supra,* 123 Vt. 26, turned on the failure of the State to obtain the consent of the respondent before taking the blood sample. As was there pointed out, the statutory design is such that a blood sample, involuntarily given, cannot be used against a respondent over his objection.

However, where, as here, the respondent consents to the testing of her blood without arrest, the statutory requirements speaking of "arrest or otherwise taken into custody" lose their binding significance. A respondent cannot have it both ways by consenting to the taking of the blood test to avoid the license suspension provision of 23 V.S.A. §1191, and yet have the admission of that very test barred because the State failed to carry out the arrest provisions which consent made superfluous. The statute is looking in the direction of a lack of actual consent, as is suggested by its reference to implied consent.

Of course it should be apparent that the giving of such consent does not waive all of the respondent's rights. The respondent is entitled to insist that all essential requirements of this group of statutes, not otherwise waived, are complied with. If consent or waiver was induced by fraud or misrepresentation, the respondent may raise the issue. For further example, the statutory command of 23 V.S.A. §1190, that evidence of such test shall be inadmissible unless the enforcement officer concerned, before the test was given, informed the respondent of the optional tests available, is certainly binding upon the State unless specifically waived.

The existence of "arrest or custody otherwise obtained" becomes significant when there is a complete refusal to take any of the statutory tests. In order to bring the license suspension provisions (23 V.S.A. §1191) into play, an enforcement officer unable to get a driver to take some one of the tests voluntarily before arrest, might well want to make the arrest and again put the inquiry. But to make an arrest a prerequisite to admission of even a voluntarily given blood test would require every driver suspected of being under the influence to be put under arrest in order to validate the very blood test that might establish that prosecution was unwarranted. The law is not so unreasonable as to deny him the right to avoid arrest by consenting to one of the statutory tests.

This is not a case requiring the exploration of the possible differences between "arrest" and "otherwise taken into custody." Although it is possible that there may be a distinction between those two situations peculiar to these statutes, this is an area of some sensitivity with respect to constitutional rights in other connections, and had best wait upon a case squarely raising the point. See generally Barrett, "Personal Rights, Property Rights and The Fourth Amendment," 1960 Sup. Ct. Rev. 46, 65-6, 69-70.

As her second claim, the respondent finds a special quality in the statutory injunction to the examining physician that he must "act in a careful and prudent manner in said blood withdrawal." 23 V.S.A. §1190. She says that it imposes upon the State the burden of demonstrating in detail, as to each step of the withdrawal proceedings, that the acts of the doctor were consistent with care and prudence. Otherwise, says the respondent, the analysis is inadmissbile.

Conceivably, cavalier conduct by the physician could destroy the admissibility of the blood analysis by giving reasonable justification for the withdrawal of consent on account of the mistreatment. However, as well as acting in a quasi-official capacity, the doctor is independently charged with the duty of acting in accordance with the requirements of his professional responsibilities. Undoubtedly the legislature felt it wise, for the protection of the involved driver, to remind the doctor that this obligation of due care was not to be dispensed with simply because the blood-taking was backed by the police power of the State. In any event, there is no injustice

in holding, as we do, that the State is entitled to the benefit of a presumption that the doctor carried out his duties in accordance with the statutory admonition, unless and until contrary evidence is introduced. See *Troy* v. *American Fidelity Co.,* 120 Vt. 410, 421, 143 A.2d 469; *State* v. *Lumbra,* 122 Vt. 467, 469, 177 A.2d 356, 91 A.L.R.2d 1235.

The trial court correctly ruled that neither of these claims of departure from the procedures required by the statutes involved were grounds for excluding the blood test evidence, and those rulings are sustained.

The respondent further contends that, irrespective of compliance with statutory procedures in the taking of the blood sample, the blood analysis evidence is inadmissible in any event. This claim is based on the alleged failure of the State to testimonially account completely for the custody of the blood sample from the time of its taking to the time of analysis. There was no direct evidence of the situation of the blood sample kit from the time of mailing as a registered parcel by the trooper to its receipt in Burlington, nor did the person who picked up the parcel at the post office and delivered it to the laboratory appear and testify. On the other hand, the evidence also clearly demonstrates that when the chemist received the parcel, all of the seals were unbroken, and it gave no indication of having been tampered with in any way.

The identification and authentication of the blood sample is a factual issue, so long as enough is shown to allow a trial court to rule favorably on its relevance, and also on its admissibility as against any possible prejudice to the respondent. As Justice Blandin of New Hampshire put it in a case involving this very point, citing 21 A.L.R.2d 1216, 1235-6: "The ultimate question remains whether on all the evidence it could be found that the blood analyzed by the State chemist was the defendant's blood." *State* v. *Fornier,* 103 N. H. 152, 167 A.2d 56, 57.

In that case as this, the container was sealed and the seal unbroken. But there was no testimony from the doctor or the trooper about labelling or marking the sample; neither tube nor container were introduced into evidence; nor did all the persons who handled the specimen testify. Examining the entire record, and noting that each case must rest on its own facts, Justice Blandin found that the only

logical and sensible explanation of the situation was that the blood sample handed the trooper by the doctor was the sample tested by the state chemist. He held, for a unanimous court, that the evidence sufficiently identified the analyzed blood as the defendant's to support its reception as evidence. The sound, practical reasoning of that case commends itself to us. With the comparatively stronger evidence of identity here, the Court finds the blood sample sufficiently authenticated to support the admission of its analysis. See VII Wigmore, Evidence, (3d. ed.) sec. 2129, p. 564-9. The trial court correctly denied exclusion on this ground.

No grounds having been brought to the attention of this Court justifying the exclusion of the blood sample in question, we hold its rejection was error and the matter must be retried.

*The ruling excluding the blood sample is overruled. The verdict is set aside and the cause remanded.*