## State of Vermont v. Richard G. Brown

[ 209 A.2d 324 ]

February Term, 1965

Present: **Holden, C. J., Shangraw, Barney, Smith and Keyser, J. J.**

Opinion Filed April 6, 1965

*J. Fred Carbine, Jr.* for the State.

*Ryan, Smith & Carbine* for respondent.

**Barney, J.** The results of an intoximeter breath test were received in evidence against the respondent in a prosecution for driving while intoxicated. A conviction followed. The respondent now brings here his claims of error in connection with admission of those test results, as well as his contention that the trial judge erred in charging the jury concerning this evidence.

The respondent was stopped by a member of the Rutland police force on one of the principal streets of that city. At the officer's request the respondent accompanied him to the local state police barracks. There he communicated with his attorney by phone, then willingly consented to take a chemical breath test to measure his blood alcohol content. The device used was a photo-electric intoximeter, operated by a state police officer. He obtained a blood alcohol content reading of 0.20.

Meanwhile the radio dispatcher had been directed to summon a doctor, and Dr. Charles Beale, an osteopathic physician, came to the barracks in answer to the call. He observed and examined the respondent in order to form an opinion as to the state of his sobriety. This examination revealed, among other things, that the respondent had had seven beers between five o'clock and seven o'clock in the evening, and was stopped by the police officer about eight o'clock. The doctor made his examination about 9:45 P.M. He filled out a report on the condition of the respondent indicating he believed him to be under the influence of alcohol.

The respondent first claims that 23 V.S.A. §1188 requires that he be "arrested or otherwise taken into custody" before test results can be admissible. Since the record does not establish that this was

the case, says the respondent, it was improper to receive evidence of the test. However, the testimony does disclose that the respondent consented to the intoximeter test. *State* v. *Auger,* 124 Vt. 50, 55, 196 A.2d 562, decided that arrest was not a statutory prerequisite to the admissibility of a blood alcohol analysis under the provisions of 23 V.S.A. §§1188 - 94, if done with consent. That holding governs here.

23 V.S.A. §1190, at the time of these events, provided that, "Only a physician acting at the request of an enforcement officer of the department of public safety may withdraw any blood of any person submitting to a chemical test under sections 1188 - 1194 of this title. . . ." Although not relevant here, it should be noted that county sheriffs and chiefs of police have been added to the class of enforcement officers authorized to act under this section, by No. 103 of the Public Acts of 1963.

The respondent would read the provisions of 23 V.S.A. §1190 into section 1194 of the same title, which reads as follows:

At the option of the person, instead of the chemical test of his blood, above referred to, he may submit to a urine test or a breath test to be taken by said physician or an enforcement officer of the department of public safety, provided such optional test shall be such as to make available to such person a current sample sufficient in substance or amount to enable such person to have an independent analysis to determine the alcoholic content of said sample and the percentages thereof referred to in section 1189 of this title. Such person's sample shall be held by the physician or officer as the case may be for a period of 30 days from its taking, for the purpose of such person's analysis and if not called for in that period of time may be destroyed.

He contends that, by reading these sections together, a requirement emerges that make the calling of a doctor by a radio dispatcher, rather than an enforcement officer, a fatal flaw in the necessary strict compliance with statutory procedures.

■ It was argued, in connection with the taking of blood samples, in *State* v. *Auger,* supra, 124 Vt. 50, 57, that the provisions of these sections should be read into one another. This position was rejected there on the basis of the clear language of the statutes, taken together with the statutory purposes. The same considerations govern here. Since the test was taken precisely as authorized by the statute, by an enforcement officer of the department of public safety, the issue of who

called the physician, or even of whether or not a physician was called, under 23 V.S.A. §1188, does not arise.

Although not directly concerned with the point, *State* v. *Auger*, supra, 124 Vt. 50, 54, also took note that 23 V.S.A. §1194 listed enforcement officers of the department of public safety as authorized to conduct urine or breath tests. In this case the evidence disclosed that special training by the inventor of the intoximeter was given to those law enforcement officers authorized to administer the test. The nature of the equipment was shown to be such that, while training was required, it was not necessary that an operator have any medical background. This very type of machine had been demonstrated to the Legislature. Accordingly, we hold that trained enforcement officers of the department of public safety are authorized to administer this kind of test, as the statute states.

It is the claim of the respondent that the test results were inadmissible here, because the state trooper who conducted this test was insufficiently trained. He calls upon us to say they should have been excluded as a matter of law as was done in *State* v. *Gregoire*, 88 R.I. 401, 148 A.2d 751.

In that case the trial justice made this comment, "Any man with ordinary intelligence could follow instructions given and see to it that it was kept in proper order and being operated correctly. Therefore, I don't think the point of the captain's alleged disqualification carries any weight with me." Further, the blood alcohol test given by the administering officer yielded a result of 0.38. This was acknowledged by the originator of the device used, who also testified, to indicate an alcoholic state inconsistent with the testimony of the witnesses or the conduct of the defendant. The officer was shown to have had approximately three hours of instruction in using the device, but no other experience was shown.

The Rhode Island Supreme Court, in ruling the evidence inadmissible, used the following language:

> The question of whether a witness is qualified to testify as an expert is within the sound judicial discretion of the trial justice. *Baffoni* v. *Baffoni*, 77 R.I. 232, 74 A.2d 857. In the instant case he did not pass upon the qualifications of the witness but, after stating that the question of his qualification was immaterial, he permitted him to testify. It is clear from what appears in the transcript that the witness was not shown to have had any substantial training or experience in the functioning of the machine. In fact he was not

shown to be an expert. Therefore, we are of the opinion that the trial justice abused his discretion in admitting such testimony.

It seems clear that the decision that the trial justice abused his discretion could be based upon the justice's stated failure to exercise his discretion, as well as upon any shortcomings in the experience of the police officer operator.

■ It is the rule in this state, also, that the decision, in the first instance, as to whether a witness is qualified to testify as an expert, is one for the trial court to make as a matter of discretion. *Fournier v. Burby,* 121 Vt. 88, 93, 148 A.2d 362. Nothing has been shown in this case to indicate that the trial court abused or withheld the exercise of his discretion.

Moreover, the factual situation was significantly different. Although the evidence as to the period of training was similar to that in the *Gregoire* case, there were several additional factors which the trial court was entitled to take into account. It was shown that this officer had administered this test with this machine on at least twenty-four previous occasions. He was checked out and found to be a competent operator by the inventor of the machine, Dr. Forrester, even though he was not entirely familiar with some of the internal workings of the intoximeter. This knowledge was not essential to the ability to administer the test properly. Nor was there any suggestion that the test results were so inconsistent with the other evidence of intoxication that they were in any way improbable.

As was said in *Parker v. Gunther,* 122 Vt. 68, 74, 164 A.2d 152, we are concluded by the ruling below as to competency, unless it is made to appear from the evidence that the decision was clearly erroneous as a matter of law. So, here , it was for the trial court to determine in the light of the evidence before it, as to whether or not the officer was a qualified operator of the intoximeter, and did in fact operate it properly. *State v. Roberts,* 102 N.H. 414, 417, 158 A.2d 458. There has been no showing requiring us, as a matter of law, to reverse the decision of the trial court on this issue.

It has been suggested by the respondent that the examining physician, Dr. Beale, was under some legal disability in this connection because he was an osteopathic physician, rather than a doctor of medicine. Insofar as this claim derives from any capacity required under the provisions of 23 V.S.A. §§1188 - 94, we have already seen that Dr. Beale, in this instance, was not present in response to any statutory demand.

■ With respect to his competency generally, the evidence disclosed that Dr. Beale had had training in medical fundamentals, including those relating to the effects of alcohol, similiar to that of doctors of medicine. But without meaning in the least to detract from the education and experience of these professionals, it is acknowledged in our law that even laymen may make the inquiries and observations comprising the question and answer type examination given here by Dr. Beale. *State* v. *Coburn,* 122 Vt. 102, 107, 165 A.2d 349. His testimony was properly received.

23 V.S.A. §1189(3) states, "If there was at the time 0.15 per cent or more by weight of alcohol in the respondent's blood, it is presumed that the respondent was under the influence of intoxicating liquor." The same statute makes it clear that that presumption does not limit the introduction of any other competent evidence on the question of whether or not the respondent was so under the influence.

Since this is stated to be a presumption subject to the introduction of contrary evidence, the respondent objected to the failure of the trial court to charge the rule as to the evidentiary effect of presumptions set out in *Tyrrell* v. *Prudential Ins. Co.,* 109 Vt. 6, 24, 192 Atl. 184. This rule says that a presumption takes the place of evidence only until enough rebutting evidence is admitted to make a jury question on the fact involved, then the presumption quits the arena and goes for naught. The State does not dispute that this statutory presumption is subject to the rule of the Tyrrell case, but claims the respondent's failure to introduce evidence rebutting the presumption made it necessary for the trial court to charge the statutory provision, as it did.

■ This Court agrees that the doctrine of the *Tyrrell* case is applicable to the presumption in 23 V.S.A. §1189(3). This brings the issue before us down to the contention briefed by the respondent, that the testimony of his doctor was sufficient, as a matter of law, to neutralize the presumption.

This presumption puts a respondent with a blood alcohol content of 0.15 or more under the influence of intoxicating liquor. The point at issue is the respondent's state of being under the influence. To meet this, the respondent put on his only witness, Dr. Merriam, pathologist at the Rutland Hospital. His testimony reflected his opinion as an expert that as many as 16% of persons having a blood alcohol content of 0.20 would not show the effects of intoxicants. This testimony was not related to the respondent in any way. Indeed, the doctor testified

he had never treated the respondent, nor even seen him until the day he gave his testimony.

This evidence might properly be addressed to a legislative body with respect to the propriety of enacting a statute such as 23 V.S.A. §1189. However, it is no evidence relative to the condition of the respondent with respect to being under the influence of alcohol. Whether or not he is one of the 16% unaffected, according to the doctor's view, does not appear. It does not, in any way, rebut the presumption that this respondent, with a blood alcohol content of 0.20, was under the influence of intoxicating liquor. Therefore, the charge of the trial court with respect to the presumption under 23 V.S.A. §1189(3) was not erroneous.

*Judgment affirmed. Cause remanded for imposition of sentence and execution.*