STATE OF IOWA, appellee, v. DANNY EARL CHARLSON, appellant.

No. 52721.

(Reported in 154 N.W.2d 829)

DECEMBER 12, 1967.

John E. Nutty, of Ames, for appellant.

Richard C. Turner, Attorney General, David A. Elderkin, Assistant Attorney General, and Charles E. Vanderbur, Story County Attorney, of Ames, for appellee.

GARFIELD, C. J.—Defendant was convicted upon trial of operating a motor vehicle while intoxicated (OMVI) in violation of section 321.281, Code, 1966. Upon this appeal he assigns error in the denial of his motion to suppress evidence of the result of a test of a sample of his blood, taken at his request and with his consent.

The blood sample was withdrawn in Mary Greeley Hospital in the City of Ames by a registered nurse designated by a licensed physician. The nurse testified she withdrew it at the oral request of the defendant and Ames Police Officer Keigley. There was no *written* request of the officer that the sample be withdrawn.

Further, the syringe used was not "new, originally factory wrapped, [or] disposable." It was, however, "kept under strictly sanitary and sterile conditions." The quoted words are found in Code section 321B.4, part of chapter 321B, commonly called the Implied Consent Law.

The nurse testified she was assured the syringe was sterile. "I opened it myself from the package. It comes from the autoclave at central supply and * * * is wrapped in paper, sterilized and when it reaches the right consistency of steam it indicates or is marked on the package it would have changed color and it did change color." The nurse also said the syringes "we use are glass and are resterilized," she was not sure of the procedure at central storage "but most of the time they go through at least two to three solutions before they are sterilized, put into individual paper containers and autoclaved."

The sample of defendant's blood was sealed, labeled and delivered to an experienced pharmacologist who had tested several hundred such samples for alcoholic content. The test revealed 248 milligrams of alcohol per 100 milliliters of blood or .248 percent. The expert testimony is in substance that alcoholic content in excess of 150 milligrams of such a sample of blood is definite proof of intoxication and the committee on alcoholism of the American Medical Association has recommended that the measure of intoxication be reduced to 100 milligrams.

Defendant's motion to suppress the evidence of alcoholic content of his blood was based on the facts the syringe used was not new, originally factory wrapped or disposable and (2) the blood sample was not withdrawn and the test administered at *the written* request of a peace officer. It is said that because of these two facts the Implied Consent Law, mainly sections 321B.3 and 321B.4, renders inadmissible on the trial of a charge of OMVI evidence of the result of the blood test.

It is implicit in this argument that strict compliance with the procedural provisions of these sections for withdrawing and testing blood, even of one who requests it or consents thereto, is a condition precedent to the admissibility on trial of the

criminal charge of evidence of the test. The argument cannot be accepted.

I. No detailed review of the evidence is necessary. We may observe, however, there is ample evidence of defendant's guilt aside from that relating to the blood test.

Defendant was a junior, age 21, at Iowa State University. About 6:45 p.m. Ames Police Officer Bird came upon him and his automobile near Sixth Street. The car had left the traveled way, knocked down a light pole and come to rest, badly damaged and inoperable, on a park road adjacent to the street. Defendant was kneeling beside a rear tire, attempting to change it. The hubcap and some or all of the wheel nuts had been removed but the auto jack was lying two to five feet behind the car. Defendant gave conflicting versions to Officer Bird and Officer Keigley, who also arrived at the scene, of the cause of the accident and the tavern where he had been drinking beer. He finally said he had hurriedly consumed a 62-ounce pitcher of five percent beer at the Sportsmen's Lounge. Both Bird and Keigley observed several familiar indications of defendant's intoxication while completing the accident report.

Officer Keigley took defendant to the Ames police station to be booked for OMVI. Since there were some indications defendant may have been injured in the accident, Keigley and Lang, a third officer, were ordered to take him to Mary Greeley Hospital to be examined by a physician. Prior to the examination he was placed under arrest for OMVI.

At the scene of the accident Officer Keigley asked defendant if he would consent to the taking of a blood test and defendant replied "Yes." On the way to the hospital defendant was told he was not compelled to undergo a blood test. At the hospital, or perhaps prior thereto (the record is not entirely clear) the purpose of taking such a test was explained to him. Before the sample of blood was withdrawn by the nurse, as previously related, defendant again gave his consent to the officer and the doctor who examined him to the withdrawal of a blood sample. And, as before indicated, the nurse testified the sample was withdrawn at defendant's request. This was not disputed.

Mention is later made of some other testimony.

II. Defendant's assigned error calls for an interpretation of our Implied Consent Law, chapter 321B, Code 1966. Defendant's main reliance is upon sections 321B.3 and 321B.4 thereof.

However, it is fundamental that in arriving at the correct interpretation of any particular provisions of the Act and the intention of the legislature as expressed therein courts should consider the entire Act and, so far as possible, interpret its various provisions in the light of their relation to the whole. Ahrweiler v. Board of Supvrs., 226 Iowa 229, 231, 283 N.W. 889; Everding v. Board of Education, 247 Iowa 743, 747, 76 N.W.2d 205, 208 and citations; Rath v. Rath Packing Co., 257 Iowa 1277, 1284, 1285, 136 N.W.2d 410, 414.

Manilla Community School District v. Halverson, 251 Iowa 496, 501, 502, 101 N.W.2d 705, 708, points out it is not permissible to rest the interpretation of a legislative Act upon any one part or to give undue effect thereto.

Severson v. Sueppel, 260 Iowa 1169, 1174, 152 N.W.2d 281, 284, involves the interpretation of the Implied Consent Law, particularly the definition in section 321B.2(4) of "peace officer" as including "Regular deputy sheriffs who have had formal police training." In rejecting a rather narrow construction of this language, the opinion states:

"In interpreting a statute we look to the object to be accomplished, the evils sought to be remedied, or the purpose to be subserved and place on it a reasonable or liberal construction which will best effect its purpose rather than one which will defeat it. [citations] It is obvious the purpose of the Implied Consent Law is to reduce the holocaust on our highways part of which is due to the driver who imbibes too freely of intoxicating liquor."

Bowman v. Commonwealth, 201 Va. 656, 661, 112 S.E.2d 887, 891 points out that procedural provisions of a somewhat similar statute are remedial in nature and "are to be construed liberally so as to avoid the mischief and advance the remedy of the evils sought to be suppressed." (citation)

See also Iowa Code section 4.2.

III. Going now to the provisions of chapter 321B properly

to be considered on this appeal, section 321B.1 states: "Declaration of policy. The general assembly hereby determines and declares that the provisions of this chapter are necessary in order to control alcoholic beverages and aid the enforcement of laws prohibiting operation of a motor vehicle while in an intoxicated condition."

To interpret the provisions of the chapter as limitations on the admissibility of evidence in a prosecution for OMVI, as defendant would have us, would create a new handicap to the law enforcement the chapter was designed to aid. It is clear the evidence relating to the test of defendant's blood taken voluntarily and at his request, would have been admissible at the time the law took effect. We find no provision in it which renders the evidence inadmissible now. It is fair to assume the Act would have so provided if the legislature intended such a vital change in procedure. Of course it is not our province to write such a provision into the statute. See Gottschalk v. Sueppel, 258 Iowa 1173, 1183, 140 N.W. 2d 866, 872.

The pertinent provisions of sections 321B.3, .4 and .6 follow:

"321B.3 Implied consent to test. Any person who operates a motor vehicle in this state * * * under such circumstances as to give reasonable grounds to believe the person to have been operating a motor vehicle while in an intoxicated condition, shall be deemed to have given consent to the withdrawal from his body of specimens of his blood * * * and to a chemical test or tests thereof, for the purpose of determining the alcoholic content of his blood, subject to the provisions hereinafter set out. The withdrawal of such body substances, and the test or tests thereof, shall be administered at the written request of a peace officer having reasonable grounds to believe the person to have been operating a motor vehicle * * * while in an intoxicated condition, and only after the peace officer has placed such person under arrest for the offense of [OMVI]. If such person requests that a specimen of his blood not be withdrawn, then a specimen of his breath, saliva, or urine shall be withdrawn at the written request of such peace officer; provided, however, that if such person refuses to submit to any chemical testing, no test shall be given, and the provisions of section 321B.7 shall apply. * * * ·

"321B.4 Taking sample for test. Only a licensed physician,

or a medical technologist or registered nurse designated by a licensed physician as his representative, acting at the written request of a peace officer may withdraw such body substances for the purpose of determining the alcoholic content of the person's blood. Only new, originally factory wrapped, disposable syringes and needles, kept under strictly sanitary and sterile conditions shall be used for drawing blood. *Such person may have an independent chemical test or tests administered in addition to any administered at the direction of a peace officer.* * * *." (Emphasis added.)

"321B.6 Statement of officer. A peace officer shall advise any person who is requested to take any chemical test that a refusal to submit to such test will result in revocation of the person's license or privilege to operate a motor vehicle; * * *."

There is substantial, although not conclusive, evidence of compliance with this last provision. Indeed, as before indicated, the only asserted lack of strict compliance with the entire Act is that the officer's request to defendant to undergo a blood test was oral rather than written and the syringe used was not new, factory wrapped or disposable, although kept under strictly sanitary and sterile conditions.

Section 321B.7 provides that if a motorist under arrest refuses to submit to the chemical testing, no test shall be given but the commissioner of public safety shall revoke his operator's license. Section 321B.8 authorizes an administrative hearing upon such revocation and 321B.9 provides for court appeals from the administrative orders.

We deem sections 321B.10, .11 and, especially, .12 to have an important bearing upon this appeal and set them out:

"321B.10 Evidence in any action. Upon the trial of any civil or criminal action or proceeding arising out of acts alleged to have been committed by any person while operating a motor vehicle * * * in an intoxicated condition, evidence of the amount of alcohol in the person's blood at the time of the act alleged as shown by a chemical analysis of his blood * * * is admissible."

The section just quoted does not state the result of a test of blood taken with the consent and at the request of an accused is not receivable in evidence upon trial for OMVI unless the sample is withdrawn in strict compliance with the procedural pro-

visions of 321B.3 and .4. We note too the entire chapter **321B** contains no requirement as to how or by whom "a chemical analysis of his blood" is to be performed. Nor does our law provide that a designated percentage of alcohol in the blood is presumptive evidence of intoxication, thus, in effect, under the view of some courts, redefining the offense of OMVI. In these respects our Implied Consent Law differs from those of some other states.

Section "321B.11 Proof of refusal admissible. If the person under arrest refuses to submit to the test or tests, proof of refusal shall be admissible in any civil or criminal action or proceeding arising out of acts alleged to have been committed while the person was operating a motor vehicle * * * while in an intoxicated condition."

Section "321B.12 Other evidence. *The provisions of this chapter shall not be construed as limiting the introduction of any other competent evidence bearing on the question of whether the person was in an intoxicated condition."* (Emphasis added.)

█ The evidence sought to be suppressed here fairly falls within the term "any other competent evidence", etc. to which 321B.12 refers. Further, this section expresses a legislative intent the chapter is not to be construed as limiting the introduction of competent evidence bearing on whether an accused was intoxicated.

█ IV. We have referred herein to the provisions of sections 321B.3 and .4 defendant contends were not complied with as procedural, rather than substantive in character. We have previously referred to them in this manner. State v. Findlay, 259 Iowa 733, 145 N.W.2d 650. For a like designation of somewhat similar provisions see Bowman v. Commonwealth, supra, 201 Va. 656, 112 S.E.2d 887, 891.

It is not claimed the sample of defendant's blood was not withdrawn or tested in a reasonable manner, in hospital environment, according to accepted medical practices. Reliability of a test so taken is not open to question. Such tests are now commonplace, the quantity of blood withdrawn is minimal and for most people the procedure involves virtually no risk, trauma or pain. State v. Findlay, supra, 259 Iowa 733, 145 N.W.2d 650, 654; Breithaupt v. Abram, 352 U.S. 432, 435, 436, 77 S.Ct. 408, 1

L.Ed.2d 448; Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908.

V. There is good reason to hold defendant is not in position to contend the evidence of the test should have been suppressed on the ground his blood was not withdrawn or tested at the written request of a peace officer. When defendant saw fit to consent to the officer's oral request and himself request withdrawal of the sample by the nurse for the purpose of testing, he should not complain that his request was granted without the delay incident to making a written request. Applicable here, by analogy, are the many precedents holding no constitutional right is violated by a search without a warrant to which the owner consents.

By his actual consent to the withdrawal and test of his blood defendant avoided revocation of his driver's license under the procedure prescribed by chapter 321B. Further and perhaps more important, he set in motion procedure to obtain persuasive proof (the result of the test) he was innocent of the criminal charge, if such were the fact as he doubtless hoped it was.

Quite in point is State v. Auger, 124 Vt. 50, 55; 196 A.2d 562, 565, 566, where it was claimed blood test evidence was inadmissible upon trial for OMVI because the blood was withdrawn when defendant was not under arrest as said to be required by the Implied Consent Law, and for other reasons. In rejecting this claim the opinion states:

"It is undisputed that the respondent in this case was not under arrest at the time the blood sample was taken. It is also undisputed that the respondent consented to the taking. The case of State v. Ball, supra, 123 Vt. 26 [179 A.2d 466] turned on the failure of the State to obtain the consent of the respondent before taking the blood sample. As was there pointed out, the statutory design is such that a blood sample, involuntarily given, cannot be used against a respondent over his objection.

"However, where, as here, the respondent consents to the testing of her blood without arrest, the statutory requirements speaking of 'arrest or otherwise taken into custody' lose their binding significance. *A respondent cannot have it both ways by consenting to the taking of the blood test to avoid the license suspension provision of 23 V.S.A. §1191, and yet have the admission*

*of that very test barred because the State failed to carry out the arrest provisions which consent made superfluous. The statute is looking in the direction of a lack of actual consent, as is suggested by its reference to implied consent."* (Emphasis added.)

State v. Brown, 125 Vt. 58, 209 A.2d 324, 326, follows State v. Auger, supra. Bowman v. Commonwealth, supra, 201 Va. 656, 661, 112 S.E.2d 887, 891, is a similar holding where the blood sample was not taken while the accused was under arrest as provided by statute. This is from the opinion:

"Bowman, having exercised his right to have a determination of the amount of alcohol in his blood at the time of the alleged offense as shown by a chemical analysis, in effect, demanded such a determination under the statute, and thereby waived any necessity that he be first arrested and the request for such determination be made within two hours of his arrest. Any other conclusion is, we think, contrary to reason and inconsistent with both the action of the defendant and the plain intent of the statute to make available as evidence the ascertainment of the amount of alcohol in the blood of a person at the time of his offense, and would defeat the purposes for which the statute was enacted."

■ VI. Our Implied Consent Law does not provide the written request of the officer for a chemical test be handed to the motorist for him to read. Gottschalk v. Sueppel, supra, 258 Iowa 1173, 1182, 1183, 140 N.W.2d 866, 871, 872. In view of this and upon the considerations stated in previous divisions hereof, we hold the fact defendant's blood was not withdrawn or the test administered at a peace officer's written request was not a substantial departure from the terms of sections 321B.3 and .4, assuming these sections are applicable to such a proceeding as this. We further hold substantial compliance with the procedural provisions of 321B.3 and .4 in such a proceeding is sufficient. Nor do we see how defendant could have been prejudiced, under the facts here, by lack of a written request from the officer.

■ VII. We also hold that under this record the use of a glass syringe, sterilized and wrapped in paper, customarily used by registered nurses under the direction of surgeons in the hospital was not a substantial departure from the procedural provisions of chapter 321B and suppression of evidence of the test

based on this fact was not required in this case. Nor was defendant prejudiced by lack of strict compliance with the provision that the syringe used be "new, originally factory wrapped, [and] disposable."

■ It is obvious the purpose of the quoted provision, together with the further language of 321B.4, "kept under strictly sanitary and sterile conditions", is to assure, so far as reasonably possible, accuracy and reliability of the test and minimize danger of infection to the person undergoing it. Where, as here, there is undisputed proof the syringe used is sterile this purpose seems to be served as fully as if the equipment were new and factory wrapped, perhaps even more so.

It is common knowledge numerous delicate surgical operations are performed with instruments previously used and sterilized for future use in hospitals. It would seem hospitals should be fully as able to supply sterile syringes as the factory does.

VIII. Lessenhop v. Norton, 261 Iowa 44, 51, 153 N.W.2d 107, 111, 112, fully considers admissibility of blood test evidence in a civil case. Nothing said herein conflicts with anything in the cited opinion. The evidence received here complies with this pronouncement in Lessenhop:

■ "Before any result of a blood test analysis can be admitted in any civil or criminal case, the party seeking to introduce such evidence must first lay a proper foundation for its admission. Unless waived, this foundation must show that the specimen was taken by a duly authorized person using proper sterile equipment, that it was properly labeled and preserved, that its care and transportation were proper, and also the identity of persons processing it so as to give the opposing party the opportunity to cross-examine as to the care and procedure used in the test." (Citations)

Upon full consideration of all contentions presented we hold the judgment should be and is—Affirmed.

LARSON, SNELL, MOORE, STUART and MASON, JJ., concur.

LEGRAND, J., concurs in result.

RAWLINGS and BECKER, JJ., dissent.

RAWLINGS, J.— I respectfully dissent. There is no need to

repeat all of Code section 321B.4. The pertinent portion of that statute provides: "*Only new, originally factory wrapped, disposable syringes and needles, kept under strictly sanitary and sterile conditions shall be used for drawing blood.*"

In my humble opinion this statutory mandate has a self-evident purpose with a meaning clearly expressed.

If the General Assembly had intended to make reusable glass syringes and needles legally acceptable for the taking of blood to test alcoholic content, it could easily have so declared. That it did not do. See in this regard rule 344(f)(13), R.C.P. Also Sueppel v. City Council of Iowa City, 257 Iowa 1350, 1354, 136 N.W.2d 523, and citations.

It would appear the maxim, "expressio unius est exclusio alterius" has some degree of relevancy in this case. See State v. Flack, 251 Iowa 529, 533, 534, 101 N.W.2d 535, and citations.

In addition it is impossible for me to agree the evidence here challenged falls within the category of "other competent evidence", to which reference is made in Code section 321B.12.

Furthermore the fact defendant may have consented to or even requested a blood test should not be deemed a waiver of the specific statutory protection afforded by section 321B.4 of the Code. See Grandon v. Ellingson, 259 Iowa 514, 144 N.W.2d 898, 903, and citations, and State v. Karston, 247 Iowa 32, 38, 72 N.W.2d 463.

I would reverse and remand for a new trial.

BECKER, J., joins in this dissent.