## State of Vermont v. Robert R. LaFleche

[ 253 A.2d 124 ]

February Term, 1969

Present: **Holden, C.J., Shangraw, Barney, Keyser, JJ., and Larrow, Supr. J.**

Opinion Filed April 8, 1969

*Joseph C. Palmisano,* State's Attorney, for the State.

*M. Martin Leinwohl, Esq.,* for the Defendant.

**Shangraw, J.** This is a prosecution for the crime of operating a motor vehicle while under the influence of intoxicating liquor, a violation of 23 V.S.A. §1183. Trial was had by jury in the Washington District Court, Connarn, J. presiding. A verdict of guilty was returned and judgment rendered thereon by the court. The respondent has appealed to this Court.

The jury could have reasonably found the following facts. During the evening of April 28, 1967 respondent went to Burlington, Vermont accompanied by Marcel Grimard. While at the residence of Grimard's brother respondent had two drinks of brandy and orange juice, also one bottle of beer. They left Burlington to return home about ten o'clock. On April 29, 1967, at a few minutes past midnight, deputy sheriff Michael Donahue, accompanied by officer Mark Joslin, encountered the respondent operating an automobile on State Aid Route No. 1 in the Town of Barre, Vermont. When first observed respondent was proceeding on a curve at a speed of approximately 70 miles per

hour. Donahue observed that respondent's car was weaving in the course of travel.

A car was directly ahead of respondent's automobile. Donahue signaled the respondent to stop, by the use of red lights positioned in the front and rear of his cruiser, and by the blowing of his siren. Each of the two automobiles preceding Donahue came to rest. After Donahue got out of his car, the first automobile took off, and respondent followed at a high rate of speed.

Donahue then followed respondent through the Town of Graniteville at speeds up to 70 miles per hour. Both cars passed another police officer, Pelletier, and the two cruisers then followed respondent's car which was then weaving in the highway, and at times driven in the center of the road.

Respondent passed his home and drove to the Rock of Ages quarry, stopped and turned off the lights on his car. Pelletier blocked the driveway with his cruiser making it impossible for the respondent to leave.

Respondent got out of his automobile, stumbled into police officer, Joslin, staggered back and then leaned against his own car. While standing within two feet of the respondent, Donahue noticed the odor of alcohol coming from respondent, and also that his speech was slurred.

Following some conversation, the respondent then volunteered to take a breath test and was transported by Donahue to District "K" Barracks in Montpelier, where the test was given by Kenneth Lansford, a state police officer. Respondent also requested Lansford to give him the breath test. At the barracks Donahue also observed that the eyes of the respondent were blurry.

The test was administered by Lansford on a photoelectric intoximeter and revealed a blood alcohol content reading of 0.15. Prior to the test respondent was advised by Donahue of his right to call an attorney which he declined to do. The "Implied Consent Law," 23 V.S.A. §§1188-1191, was also explained to him.

Respondent was first placed under arrest after completion of the breath test and taken to jail.

The jury was impaneled on August 28, 1967. At this time the respondent objected to the trial court's failure to give a general charge, as to the duties and responsibilities of jurors. This objection was renewed at the opening of the trial on August 30, 1967. The respondent then moved for a mistrial for this reason. The motion was denied.

We recognize that it has been the long established practice in county courts to give general instructions to jurors called for service during each term. Such general instructions are informative and precautionary in nature. They are intended to aid jurors as to their duties and responsibilities, and thus serve as guidelines to follow in their conduct and actions as jurors.

█ We approve of this practice. The employment of jurors being temporary, and their prior acquaintance with the system being but casual, they are often unacquainted with the solemnity of their duties and do not have a full comprehension of their scope. Wherever and whenever possible, the judges of the lower courts should fully instruct them as to the measure of their obligations and responsibilities. There is, however, no statutory mandate for such action by a trial court, nor has the respondent pointed out any such requirement in Vermont.

Moreover, immediately prior to the opening of the trial, the court called to the jury's attention the nature of the case, that the burden was on the State to prove the respondent's guilt beyond a reasonable doubt, the procedure as to presentation of evidence, first by the State, and then by the respondent, arguments of counsel, and the jury's final retirement following the charge for the purpose of rendering a verdict of guilty or not guilty. As is the custom, the court charged the jury following the evidence and arguments of counsel.

█ Respondent has not pointed out any failure of duty on the part of the jurors, nor does his claim of prejudice have any support. His motion for a mistrial was properly denied.

Following the testimony of trooper Lansford, the respondent moved that his testimony be struck from the record insofar as it related to the photoelectric intoximeter, tests made and the result thereof. In support thereof it was claimed below, and now urged, that the evidence failed to reveal that Lansford was a competent operator of the intoximeter.

Lansford testified that he received instructions concerning the operation of photoelectric intoximeters at a training school and was familiar with their operation. During the past one and one-half years he had made approximately twenty-five intoximeter tests, fifteen of which he had conducted alone, independent of any assistance. He also stated that in making the test of respondent he followed the required procedure and instructions. Lansford demonstrated the operation of

the intoximeter in the court room in full view of the court, the jury and counsel.

■ This Court has stated in the case of *State* v. *Brown,* 125 Vt. 58, 60, 209 A.2d 324 that trained enforcement officers of the Department of Public Safety are authorized to administer chemical breath tests by means of an intoximeter. Whether Lansford was a qualified operator of the intoximeter was a question for the trial court to first rule upon as a matter of discretion. *State* v. *Brown, supra,* 62, 209 A.2d 324. In the *Brown* case, *supra,* the officer who was held qualified by the court to operate the machine, had about the same amount of experience as Lansford in the instant case.

■■ We are satisfied from the evidence that Lansford had such knowledge and experience as to have enabled him to properly set up, operate and read the intoximeter. It is not required that he understand the scientific principles of this test or be able to explain the internal workings of the intoximeter. There has been no showing that he was not qualified, as a matter of law, to make the test in question. *State* v. *Johnson,* 42 N.J. 146, 199 A.2d 809, 823.

■ It is also urged on brief that the evidence lacked proof that the intoximeter used was in good workable order and accurately functioning at the time the test was made. This question was not raised below. Also, evidence that the intoximeters are periodically tested to assure they are functioning properly came into the case without challenge and was therefore available for the jury's consideration. Respondent cannot previal on this point.

■ 23 V.S.A. §1189(3), states, "If there was at the time 0.10 percent or more by weight of alcohol in the respondent's blood, it is presumed that the respondent was under the influence of intoxicating liquor." This same statute makes it clear that this presumption does not limit the introduction of any other competent evidence on the question of whether or not the respondent was under the influence.

■ In addition to the results of the intoximeter tests, there also appears in evidence the testimony of officer Donahue who had ample opportunity to make observations of the sobriety of the respondent. Recognition of the fact of intoxication requires no particular scientific knowledge or training. Such fact is open to proof by competent lay witnesses. *State* v. *Coburn,* 122 Vt. 102, 107, 165 A.2d 349.

The respondent claims that he was denied his constitutional rights. In his brief he recites in depth the warnings contained in *Miranda* v.

*Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, and attempts to apply them to the instant case. In support of this view, respondent primarily asserts that Donahue took the respondent into his custody in Graniteville, at the time the respondent got into Donahue's car for transportation to District "K" Barracks at Montpelier, and that he was not advised of his rights under the Miranda decision.

■ Donahue testified that he did not ask the respondent to take the breath test. On the contrary, respondent volunteered to do so. On cross-examination Donahue further testified that respondent entered his car voluntarily and without request on his part. Respondent was not arrested until taken to jail following the intoximeter test.

■ Even if it can be said that the test was not voluntarily taken by the respondent, the privilege against self-incrimination does not apply to evidence that is not testimonial or communicative in nature. *Schmerber* v. *California* (1966), 384 U.S. 757, 760, 86 S.Ct. 1826, 16 L.Ed.2d 908, 914.

The State did not, during the trial, request Donahue, while a witness, to relate any statements made by the respondent. In fact, the only statements made by the respondent were elicited by cross-examination on the part of the respondent's counsel. Respondent was afforded the opportunity to call an attorney, which was declined by him.

In the *Miranda* case, *supra,* Chief Justice Warren, speaking for the majority made these pertinent comments:

"Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence."

"General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding."

Moreover, the evidence reveals that the respondent at no time was taken into custody or otherwise deprived of his freedom of action in any significant way until after the test was completed.

■ While we appreciate the critical importance of the constitutional rights to counsel and against self-incrimination, the record fails to convince us that there should be a reversal of this case. There appears no invasion of respondent's constitutional rights.

*Judgment affirmed. Let execution be done.*