# State of Vermont v. Jarrol Ward Magoon

[264 A.2d 779]

No. 101-69

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed April 7, 1970

*Kimberly B. Cheney,* State's Attorney, for the State.

*McKee & Clewley,* Montpelier, for Defendant.

**Holden, C.J.** After observing erratic operation of a motor vehicle on U.S. Route 2, between Barre and Montpelier, two officers of the Vermont State Police followed and later apprehended the respondent in Montpelier on January 18, 1969. He appeared to the arresting officers to be under the influence of intoxicating liquor and was taken to the nearest state police barracks for examination.

The respondent, while in custody, was afforded due and proper warning of his right to counsel and to remain silent. The substance and effect of the provision of the implied consent law (23 V.S.A. §§ 1188–1194) were explained. The respondent elected to take a breath test. The test was administered by state police officer Melvis E. Morris by use of a testing device, referred to as the photo-electric intoximeter.

The results of the test indicated a blood alcohol concentration to the extent of 0.21 percent. On the strength of this result, the state pathologist Richard Woodruff, M.D., testified that, in his opinion, the subject was grossly intoxicated at the time of the test. This evidence was received in the trial of the respondent for operating a motor vehicle while under the influence of intoxicating liquor, contrary to 23 V.S.A. § 1183.

A verdict of guilty was returned. The respondent appeals from the judgment of conviction to claim the lower court was in error in receiving the results of the test produced by the intoximeter. The assignment of error is based on two grounds; (1) that the materials and liquids used in the testing procedures were not sufficiently identified and (2) the officer administering the test did not have scientific knowledge of the internal operating mechanism of the intoximeter.

Officer Morris testified that he had been in the service of the state department of public safety for three years. He had attended a one-day service training school conducted by the Vermont state pathologist and experienced police personnel.

He had received instruction in operating techniques, procedures and function of the machine. He had administered the test under the supervision of superior officers. Thereafter he conducted some thirty to thirty-five tests without supervision, prior to testing the respondent.

The photo-electric intoximeter was calibrated by the operator prior to administering the test. The calibration procedure involved the use of a "reference ampule" which was inserted in the test well. A reading obtained with the test ampule was zero. The ampule was then replaced with a stock ampule furnished by the manufacturer in a sealed container. The seal was broken by the operator, placed in the test well and a reading procured before taking the specimen. If the machine is operating properly the reading will be the same as with the reference ampule. The reading taken before testing was 0.0.

The breath sample was collected in a perchlorate tube. It was provided by the manufacturer, sealed and capped. The seals remained unbroken until the time of testing.

The results of the test are punched out on a card provided by the manufacturer. The card not only provides for reporting the test result but serves as a checklist, specifying step by step instructions for administering the test. The card, sealed stock ampules and perchlorate tubes were furnished by the Photo-Electric Intoximeter Company.

Apart from the information furnished by the manufacturer, Trooper Morris did not have personal knowledge of the chemical composition of the substance contained in the sealed ampules and perchlorate tube. The witness testified the machine was working properly and that it was properly cleaned, or flushed, before the test was given. He conceded he was not an expert on the internal function of the machine, and that he used the operating instructions to make certain of correct operation and correct results. The machine was subject to periodic inspections and testing.

A sample of the specimen taken was reserved for the respondent as provided in 23 V.S.A. § 1190. The respondent did not avail himself of the sample taken for his use.

The lower court's ruling on the competency of Officer Morris is not subject to revision here unless it is clear from the record that the reception of his testimony was in error as a matter of law. *State* v. *Brown,* 125 Vt. 58, 62, 209 A.2d 324.

The respondent urges the witness' lack of knowledge about the internal functioning of the machine and his reliance on the manufacturer's instructions and labels as to the chemical composition of the testing materials rendered the operator's testimony inadmissible and its reception reversible error.

■ The controlling consideration is whether the evidence given by the operator, concerning the test and its results, is trustworthy. It is now generally recognized that breath tests, including the electronic intoximeter, are relatively easy to administer. In such tests it is not essential that the operator be a scientist nor that he understand the technical and scientific functioning of the instrument. *State* v. *LaFleche*, 127 Vt. 482, 486, 253 A.2d 124; *State* v. *Johnson*, 42 N.J. 146, 199 A.2d 809, 823; Donigan, Chemical Tests and the Law, 89, 92 (2d Ed.) ; See also annotation 77 A.L.R.2d 971 et seq.

■ Justice Hall's opinion in *State* v. *Johnson, supra,* appropriately points out "(i)t is, of course, most essential, in view of the heavy impact the result can have, that proper administration of the test be clearly established before the reading is admitted in evidence. This includes full proof that the equipment was in proper order, the operator qualified and the test given correctly (as well as the fact that the defendant consented orally or in writing) : . . ." 199 A.2d, *supra,* at 823.

The evidence in the present appeal is within these standards. While Officer Morris was not familiar with the chemical composition of the sealed testing materials, Dr. Woodruff supplied some of the deficiency in his testimony on cross-examination that a solution of chromic acid was used in conducting the test.

We recognize that the foundation for the results of the test would have been more secure if the lot from which the pre-mixed sealed chemicals were taken had been subjected to spot analysis for composition and strength. See Donigan, Chemical Tests and the Law, *supra,* at 70. But this point was not raised below and there is nothing in the record to suggest improper chemical substances were used.

■ It is conceded that the officer administering the test had sufficient knowledge, experience and training to properly set up, operate and read the intoximeter. The fact that he

was not able to explain the technical theory of the instrument, nor precisely identify the constituents of the chemical substances used, does not render the results of the test inadmissible as a matter of law.

■■ It is not required that the results of accepted chemical testing methods be infallible to be admissible. If the test affords reasonable assistance to the triers of the fact, technical shortages in the manner or method of proof may affect its weight but do not control its admissibility. *State* v. *Roberts,* 102 N.H. 414, 158 A.2d 458, 460. Compare, *State* v. *Gregoire,* 88 R.I. 401, 148 A.2d 751, 753.

■ It was for the trial court to determine on the evidence at hand whether the state police officer was a qualified operator of the testing device and whether the test was properly conducted to achieve a reliable reading. *State* v. *LaFleche, supra,* 127 Vt. at 486; *State* v. *Brown, supra,* 125 Vt. at 62; *State* v. *Roberts, supra,* 158 A.2d at 460. There was nothing of substance presented by the respondent to adversely affect the weight of this evidence. He admitted an intake of both whiskey and beer the afternoon of his arrest. And there was persuasive evidence of objective symptoms of intoxication to confirm the result indicated by the Forrester intoximeter. In this context of the record, the judgment of conviction is sustained.

*Judgment affirmed.*