STATE of Delaware

v.

Raymond W. LYNCH.

Superior Court of Delaware,
New Castle.

Jan. 25, 1971.

Richard R. Wier, State Prosecutor, Wilmington, for plaintiff.

Robert G. Carey, Wilmington, for defendant.

QUILLEN, Judge.

The defendant was convicted of driving under the influence by a jury. After initially refusing to take a breath test, the defendant on request was permitted to talk to his attorney and thereafter consented to the test on the advice of his attorney. A breath test was taken and the results admitted into evidence. It showed a reading of 0.132 percent blood alcohol by weight, a reading considerably higher than the 0.10 standard necessary to give the State the advantage of the statutory presumption. The defendant has moved for a new trial on two grounds.

The defendant first claims that it was error for the Court to admit testimony that the defendant initially refused to take a mobat chemical test for a blood alcohol reading when he later, after talking to his lawyer, consented to the test. The short and complete answer to this objection is that, assuming it has validity, in view of the reading, it could at best be harmless error. Moreover, the objection has no validity.

It is true that the statute says the test shall not be given if an accused refuses to consent and further that evidence of the refusal is admissible. 21 Del.C. § 2737. But the statute obviously was not intended to preclude an accused from changing his mind and consenting to the test. If he does, the test may be given.

But the defendant argues that, if the test is given after a belated consent, evidence of initial refusal is inadmissible. In essence, the defendant argues that the statute, by authorizing admission into evidence of a refusal when the test is not given, prohibits by implication admission into evidence of a refusal when the test is subsequently given. The statute does no such thing.

In the first place, the statute was obviously intended to broaden the police arsenal in the fight against persons who drive while under the influence and therefore implications of statutory restrictions on evidence should not be drawn. Second, without a statute, it has been our law that a refusal to submit to a sobriety test may be considered by the jury. State v. Durrant, 5 Storey 510, 188 A.2d 526 (Sup.Ct. 1963). Third, as indicated in *Durrant,* the defendant's conduct, demeanor, statements, and attitude are vital evidence on his sobriety and, even if it were thought desirable to keep out evidence of a refusal to take a sobriety test, it would be difficult to isolate the test refusal from the other admissible circumstances without distorting the whole truth; it should be told as it was. Fourth, the defendant mistakenly urges the "dero-

gation of the common law" argument because, under *Durrant*, the statute is merely confirmatory of the common law in the situation it covers.

The case cited by the defendant, DiSalvo v. Williamson, R.I., 259 A.2d 671 (1969), does not support his proposition because factually in that case it was argued that the police should attempt to administer the test even after a refusal; it simply did not deal with a voluntary change of mind on the defendant's part.

■ The second ground for a new trial is that the results of the chemical test should not have been admitted because the defendant was not arrested for driving under the influence before the test was administered and such an arrest is a requirement under the statute. The short and complete answer to this objection is that it was not raised at trial and therefore has been waived. Moreover, the objection has no validity.

■ The defendant suggests that it would be a violation of due process to have a statutory option of submission to a chemical test or loss of license without an arrest, citing Schutt v. Macduff, 205 Misc. 43, 127 N.Y.S.2d 116 (Sup.Ct.1954). Such a constitutional result would certainly be unfortunate because it would require the police to create an arrest record for those suspected of driving under the influence when the investigation was not complete and when a simple, accurate and reasonable test could exonerate the citizen. See State v. Auger, 124 Vt. 50, 196 A.2d 562. Moreover, our law recognizes other situations when arrest is not required for a detention. 11 Del.C. § 1902. Certainly, a statute in terms of arrest or reasonable grounds to believe on the part of the law enforcement officer before arrest should pass the due process test. Compare Otte v. State, 172 Neb. 110, 108 N.W.2d 737 (1961); State v. Auger, *supra.*

But the defendant argues that the Delaware statute makes implied consent effective "whenever [any person] shall be arrested for driving a motor vehicle while under the influence of intoxicating liquor" and, if he refuses, "after arrest", he may, after an administrative hearing, lose his license. The defendant notes that here he had only been arrested for speeding and therefore the statute does not come into play.

The difficulty with the defendant's argument is that it is directed to a factual situation not here pertinent. In the first place, this is not a review of an administrative determination that the defendant should lose his license for refusal to take the test. In the second place, there is no question in this case of reliance on police pressure to require the defendant to submit at the threat of the loss of his license without performing the prerequisite arrest.

■ Here, the defendant, after his arrest for speeding, was given an opportunity to consult his attorney and then, and only then, did he consent to the test. He obviously did not rely on the police or respond to police pressure.* If the defendant had refused to take the test on the ground that he was not under arrest for driving under the influence, the police could have properly and undoubtedly would have accommodated him. The record is clear beyond any doubt that the defendant intelligently consented to taking the test after being given an opportunity to consult with his attorney. It certainly smacks of poor grace for him to retroactively suggest for the first time after trial that police procedures were improper even assuming the police erroneously thought the implied consent law was activated without an arrest for driving under the influence.

The cases cited by the defendant do not help him under the circumstances here. Four of them with situations where con-

* See Transcript, page 137 where the following appears. "Q Why did you talk to Mr. Becker before you took the test?

A Because I thought before I done anything, if I was going to be arrested, that I should have the advice of an attorney."

sent was not given. State v. Ball, 123 Vt. 26, 179 A.2d 46 (1962); State v. Cruz, 21 Utah 406, 446 P.2d 307 (1968); State v. Towry, 26 Conn.Sup. 35, 210 A.2d 455 (1965); Otte v. State, 172 Neb. 110, 108 N.W.2d 737 (1961). The others are cited for general propositions which are not disputed here. State v. Gallant, 108 N.H. 72, 222 A.2d 597 (1967); State v. Auger, *supra*. There was no complete refusal to take the test here. There was consent with the advice of counsel after an initial refusal. That's the way it was.

The motion for a new trial is denied. It is so ordered.