SUPERIOR COURT
OF THE

RICHARD F. STOKES
*JUDGE*

SUSSEX COUNTY COURTHOUSE
1 THE CIRCLE, SUITE 2
GEORGETOWN, DE 19947
TELEPHONE (302) 856-5264

October 10, 2018

Georgia C. Pham, Esquire
Department of Justice
114 East Market Street
Georgetown, DE 19947

Chad R. Lingenfelder, Esquire
The Smith Firm, LLC
8866 Riverside Drive
PO Box 1587
Seaford, Delaware 19973

> RE:   **State of Delaware v. Malcon J. Williams**
> Case ID: 1801012469

Dear Counsel:

I have reviewed the exhibits and your arguments which were submitted after the

suppression hearing.  The defendant's motion is denied.  The police had probable

cause (more than reasonable articulable suspicion)to stop defendant for excessive

speeding and  making an improper lane change from the right to the left lanes on

SR 1 without signaling.  After the stop, the police developed probable cause to

arrest defendant for DUI.

## Findings of Fact and Conclusions of Law

(1) On January 14, 2018 officers Ingram and Botchie of the Delaware State Police were performing routine patrol duties after 01:00 a.m. at a gas station adjacent to SR 1. Both are experienced police officers with certifications showing competence in NHTSA and DUI detection procedures and in the operation of radar. By training and experience, they may offer opinions on speed and sobriety based upon personal observations. (2) At approximately 01:12 a.m. they observed a vehicle heading northbound on SR 1 at a high rate of speed. The vehicle had a speed of 83 mph in a 45 mph zone. SR 1 is a major highway with two northbound lanes and two southbound lanes. (3) The officers followed the speeding vehicle. Both police cars were marked, their DVD's were operational and their radar units were calibrated and in good operating order. (4) From about 01:12 a.m. to about 01:17 a.m they pursued the speeding vehicle. At times, Ingram's vehicle had to be driven at speeds approaching 123 mph to close the gap. Although the chase occurred in the early morning, there was traffic on SR 1 in both lanes of travel. At about 01:16 a.m., Ingram observed a vehicle in front of him. The vehicle made an abrupt improper turn without signaling from the right to left lanes immediately in

front of another vehicle. This would be a violation of 21 Del.C. § 4122(1). The dangerous movement is captured on Exhibit 11. At the hearing, Ingram focused on defendant's return to the right lane where a signal was used. The first maneuver would be a violation of 21 Del.C. § 4122(1). The vehicle's rear exterior and tail lights were unique, and he determined it was the same vehicle that was observed by the BP station at 01:12 a.m. During the episodes, the vehicle had been speeding with clocked speeds of 97 mph and 102 mph in a 55 mph zones. During radio communications, the officers spoke about another vehicle possibly being involved. However, I find Ingram's testimony matching the car observed at about 01:16 a.m. with this one at about 01:12 a.m. to be credible given his training and experience. From about 01:12 a.m. until stop of the defendant at about 01:17 a.m., the defendant drove far beyond posted speed limits from 83 mph in a posted 45 mph zone to 97 mph and 102 mph in a posted 55 mph zone.

(5) When stopped, defendant was observed wearing sunglasses, an odd circumstance for one driving in the dark. Cpl. Ingram questioned defendant followed by Tpr. Botchie. A strong odor of alcohol was observed. Four airplane sized bottles of liquor were observed in the front seat. Two were empty, and two remained full. One was in the cupholder by the steering wheel. When asked about speeding, the defendant stated he was going to Cheswold to pick up his sick daughter. When the subject of alcohol use was mentioned, the defendant claimed

he had none when out driving but had been drinking beforehand at a friend's house. Watery and glassy eyes were observed.

Under the law, "a law enforcement officer may "seize" a vehicle and its occupants to conduct a brief, investigatory traffic stop if the officer has reasonable and articulable suspicion of criminal activity. That criminal activity may include both traffic offenses and drunk driving. In assessing whether an officer had reasonable and articulable suspicion, the Court considers whether the objective facts, viewed through the lens of a reasonable trained police officer, would "warrant a person of reasonable caution in the belief that the action taken was appropriate." The standard requires a "commonsense approach" that considers "the factual and practical considerations of everyday life on which reasonable and prudent (people), not legal technicians, act."" *State v. Riggins*, 2007 WL 6205778, at *3 (Del. Super. Ct. December 7, 2017).

(6) With this guidance in mind, the police had reasonable articulable suspicion to perform pre-exit and standard sobriety tests for DUI. Tpr. Botchie asked defendant to recite an alphabet and counting test. The defendant is college educated. Defendant was asked to state the alphabet from "E" to "P." Defendant responded "E", "P" and then paused saying "hold on." Then he recited the alphabet from "E" to "P." A letter was transposed. The alphabet test was incomplete.

On the counting test, defendant was instructed to count backwards from "69" to "55." Defendant was asked what the first number was and he correctly said "69." However, when asked what the last number was the defendant incorrectly advised "50." Defendant was instructed again and defendant said he understood to count from "69" to "55." He stated "69" to "55" but then stated "54", followed by "59" and counted backwards to "55." Defendant transposed numbers, repeated numbers and was unable to follow clearly given instructions.

Both tests are not NHTSA ones but have been used along with demeanor evidence as part of the circumstances. Defendant did not perform as well as would be expected from one with college experience or from one who otherwise should be able to exercise clear judgment.

Additional investigation was justified. When asked to perform the NHTSA recognized one leg stand and walk and turn tests, defendant stated he had a knee injury and was unable to do them. Defendant was able to walk from the driver's side of his car in front of the officer's vehicle without apparent difficulty. No limping nor loss of coordination was observed. Defendant's speech was fair. When given opportunities to perform a PBT, the defendant refused. The defendant was talkative, and the officers felt defendant was impaired. Following his refusal to take a PBT, the defendant was arrested.

(7) Under Delaware law, "under the influence" shall mean that the person is,

because of alcohol...less able than the person ordinarily have been, either mentally or physically, to exercise clear judgment, sufficient physical control, or due care in the driving of a vehicle" 21Del.C. § 4177(c)(11). Probable cause to arrest exists when an officer possesses information which would warrant a reasonable man to believe that a crime has been committed. Here, this standard requires officers to "present facts which suggest, when those facts are viewed under the totality of the circumstances that there is a fair probability the defendant was driving under the influence." The police must possess a "quantum of trustworthy factual information" sufficient to warrant a man of reasonable caution in believing a DUI offense was committed. *Lefebvre v. State*, 19 A.3d 287, 292-93 (Del. 2011). Probable cause does not demand a showing that guilt is more likely than not - language frequently employed for the preponderance of evidence standard. *State v. Maxwell*, 624 A.2d 926, 930 (Del. 1993). Probable cause is a practical, common sense judgment based on the information known to the officer. *State v. Woo*, Del.Super., Cr.A. No. IN89-06-1080, Balick, J. (Oct. 27, 1989), *aff'd*, 571 A.2d 788 (Del. 1990). A "defendant's conduct, demeanor, statements, and attitude are vital evidence of his sobriety...." *State v. Lynch*, 274 A.2d 443, 444 (Del.Super.Ct. 1971).

Under the totality of the circumstances, there was a far probability that the defendant was less able than ordinary to exercise clear judgment and due care in

the driving of his vehicle on January 14, 2018 because of impairment. This legal conclusion arises from these facts which were established by the preponderance of the evidence: (1) Defendant was driving at dangerous high rates of speed on SR 1 from about 01:12 a.m. to about 01:17 a.m. as noted above. There was other traffic present despite the early morning time. While speeding, defendant shifted without signaling from a right to left lane. Abruptly, he turned from the right to left lanes at about 01:16 a.m. His vehicle turned in front of a car on the left lane. The continuous excessive speeding and maneuvers were dangerous and reflected a lack of clear judgment and inability to drive with due care. Defendant was rushing to pick up a sick daughter. The daughter was with an adult, and there was no emergency. (2) A strong smell of alcohol was detected; there were two open bottles of alcohol and one was in the cupholder; defendant's eyes were watery and glassy; driving at speeds up to 102 mph, all while wearing sunglasses, shows defendant's judgment was impaired. Defendant admitted to drinking at a friend's house before driving but not thereafter. However, defendant's explanation does not have to be taken at face value. Rather, a common sense determination can be made that defendant was actually drinking from these bottles while driving on SR 1 and had done so before leaving his friend's house in such a manner as to cause him to operate his vehicle like a speeding bullet on a major public highway. (3) Despite a college education, defendant did not perform well on the alphabet and

counting tests. (4) Defendant was very talkative and refused to take a PBT when standard field sobriety tests could not be performed. Under Delaware law, the refusal to take a PBT reflects consciousness of guilt. *State v. Durrant*, 188 A.2d 526 (Del. 1963). Even considering defendant's ability to walk and fair speech, there was nonetheless a quantum of trustworthy factual information sufficient to warrant a man of reasonable caution to believe a DUI offense was committed through the experience and observations of a trained police officer.[1]

IT IS SO ORDERED.

Very truly yours,

Richard F. Stokes

RFS:tls

cc:    Prothonotary

---

[1]On a motion to suppress evidence seized during a warrantless search, the State bears the burden of proving that the challenged search and seizure was reasonable, lawful and constitutionally permitted. See *Hunter v. State*, 783 A.2d 558 (Del. 2001).